NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2944

HUNT ET AL., APPELLANTS, *v.* ALDERMAN, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hunt v. Alderman*, Slip Opinion No. 2025-Ohio-2944.]**

*Civil procedure—Service of process—Sufficient service under Civ.R. 4.1(A)(1)(a) requires using an address that is reasonably calculated to apprise the defendant of the lawsuit—Service to defendant-appellee's former residential address was not reasonably calculated to provide notice, so it was insufficient—Court of appeals' judgment affirming trial court's award of summary judgment to appellee for lack of proper service affirmed.*

(No. 2023-1463—Submitted January 7, 2025—Decided August 21, 2025.)

APPEAL from the Court of Appeals for Summit County,

No. 30344, 2023-Ohio-3454.

_____

DETERS, J., authored the opinion of the court, which FISCHER, DEWINE, HAWKINS, and SHANAHAN, JJ., joined. KENNEDY, C.J., dissented, with an opinion joined by BRUNNER, J.

**DETERS, J.**

{¶ 1} The plaintiffs in a personal-injury lawsuit served the summons (with the complaint attached as required by Civ.R. 4(B)) to the wrong address, even though they were aware of the defendant's proper address. Despite the plaintiffs' mistake, the defendant eventually received the summons just days before his answer was due. The defendant moved for summary judgment after the deadline for commencing the lawsuit had passed, citing insufficient service. The trial court concluded that although the service complied with Civ.R. 4.1(A)(1)(a), it did not comply with the due-process requirement that service be reasonably calculated to notify the defendant of the lawsuit, so the court granted the defendant's motion. The Ninth District Court of Appeals affirmed the trial court's judgment.

{¶ 2} The plaintiffs appealed and now invite this court to hold that courts may consider whether a service attempt complies with due-process service requirements only if a defendant establishes that he never received the summons. We decline their invitation. This court looks to due process to "determine the parameters for proper service," and we have held that certified-mail service is sufficient only if it is "'reasonably calculated' to reach interested parties." *Akron-Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403, 405, 406 (1980). This holding remains true today.

{¶ 3} The plaintiffs' attempt at service was not sufficient, because it was not reasonably calculated to reach the defendant. And because the plaintiffs never perfected service, they did not commence their action within one year of filing their complaint. *See* Civ.R. 3(A). Thus, the trial court properly granted judgment in favor of the defendants. We therefore affirm the Ninth District's judgment.

## I. BACKGROUND

{¶ 4} In 2012, Deputy Sheriff Miguel Hunt and his wife Michelle filed a lawsuit against Deputy Sheriff Robert Alderman Jr. for injuries Miguel sustained

during a law-enforcement training exercise. The lawsuit was pending for nearly seven years. But ultimately, the Hunts voluntarily dismissed that lawsuit without prejudice in 2018. Not quite one year later, the Hunts timely refiled their lawsuit against Alderman.

{¶ 5} After the Hunts refiled their complaint, they attempted to perfect service on Alderman at the same address they had used to perfect service of the first summons: a residential property in Cuyahoga Falls. Alderman's father owned the property at the Cuyahoga Falls address, and Alderman had at one time lived at the property as a tenant. But Alderman no longer lived there when the second complaint was filed. In fact, in February 2014, while being deposed during the first lawsuit, Alderman notified the Hunts' counsel that he had moved to a property in Canal Fulton. The Hunts claim to have directed the certified-mail service of the summons to the Cuyahoga Falls address inadvertently.

{¶ 6} Two people unrelated to Alderman—Kayla McCullough and her fiancé Adam Kruger—were renting the property at the Cuyahoga Falls address from Alderman's father at the time that the Hunts were trying to perfect service in the refiled lawsuit. McCullough signed a certified-mail receipt for the summons on May 6, 2019. She did not realize that the certified mail was addressed to Alderman until after she signed the receipt. For nearly three weeks, McCullough did nothing with the summons for which she had signed. Then, on May 26, Kruger contacted their landlord, Alderman's father, and told him about the mailing.

{¶ 7} At some point after May 26, Kruger mailed the summons to Alderman's father at his home in Seville, Ohio. And Alderman's father handed the documents to Alderman sometime in early June, though the precise day is unknown.

{¶ 8} If service at the Cuyahoga Falls address was sufficient, then Alderman's deadline to file an answer was Monday, June 3, 2019: 28 days after McCullough signed the certified-mail receipt. *See* Civ.R. 12(A)(1). However,

Alderman filed an answer to the Hunts' refiled complaint on June 6, 2019, and in his answer, he raised the affirmative defense of insufficient service of process. The Hunts made no additional attempt to perfect service.

{¶ 9} Almost two years after the refiled lawsuit was filed, Alderman moved for summary judgment based on insufficient service of process. He argued that the Hunts had failed to perfect service under Civ.R. 4.1 within one year as required by Civ.R. 3(A) and therefore had failed to commence their action. Service, Alderman maintained, had not been sufficient, because he neither owned nor lived at the Cuyahoga Falls address.

{¶ 10} The trial court granted summary judgment in favor of Alderman. Although the trial court decided that the Hunts' service attempt complied with Civ.R. 4.1(A)(1)(a), it held that service to an outdated residential address was nevertheless insufficient under due-process standards because it was not reasonably calculated to give notice to Alderman. The Ninth District affirmed the trial court's judgment on the same grounds. 2023-Ohio-3454, ¶ 10 (9th Dist.). The Hunts appealed to this court.

{¶ 11} We accepted jurisdiction over the following two propositions of law:

1. There is no denial of due process when a defendant is timely served with the Summons and Complaint by hand-delivery.

2. A party waives its Civil Rule 12(b)(4) and (5) service defenses through sufficient participation in the litigation.

*See* 2024-Ohio-163. The Hunts' second proposition has been resolved by this court's recent decision in *Ackman v. Mercy Health W. Hosp., L.L.C.*, 2024-Ohio-3159, in which we reaffirmed the long-standing rule that participation in litigation does not amount to a waiver of the Civ.R. 12(B)(4) and (5) service defenses. We

decline to revisit our decision in *Ackman*, so we address the Hunts' first proposition only.

## II. ANALYSIS

*A. For service to be proper, it must satisfy both Civ.R. 4.1(A)(1)(a) and the due-process requirement that it be reasonably calculated to reach the defendant*

{¶ 12} The rules governing service of process derive both from the Ohio Rules of Civil Procedure and the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Akron-Canton Regional Airport*, 62 Ohio St.2d 403, at syllabus. Civ.R. 4.1(A)(1)(a) (previously numbered Civ.R. 4.1(1)) focuses on "*how* service shall be made." (Emphasis in original.) *Akron-Canton Regional Airport* at 404-405. The text of the rule leaves open-ended the specific address to which the summons must be sent:

> Service by United States certified or express mail. Evidenced by return receipt signed by any person accepting delivery, service of any process shall be by United States certified or express mail unless otherwise permitted by these rules. The clerk shall deliver a copy of the process and complaint or other document to be served to the United States Postal Service for mailing at the address set forth in the caption or at the address set forth in written instructions furnished to the clerk . . . .

Civ.R. 4.1(A)(1)(a).

{¶ 13} While Civ.R. 4.1(A)(1)(a) focuses on "how service shall be made," the specifics of "*where*, or *to whom*[,] process may be served" are derived from due-process guarantees. (Emphasis added.) *Akron-Canton Regional Airport* at 404-405; *see also Morrison v. Steiner*, 32 Ohio St.2d 86, 89 (1972) ("service must be carried out pursuant to the rules governing service of process, and those rules

themselves must comport with the due process provisions of the Fourteenth Amendment to the United States Constitution"). Due process "determine[s] the parameters for proper service." *Akron-Canton Regional Airport* at 405; *see also Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293 (1981) ("Service of process made at the business address of an individual or a corporation pursuant to Civ.R. 4.1(1) however, must comport with the requirements of due process.").

{¶ 14} The seminal case applying due process to service of notice is *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Unlike in this case, in *Mullane*, the issue was whether the parties' due-process rights had been violated, but *Mullane* remains helpful to describe the contours of sufficient service, *see Dusenbery v. United States*, 534 U.S. 161, 167-168 (2002) (confirming that "*Mullane* supplies the appropriate analytical framework" for addressing "questions regarding the adequacy of the method used to give notice"). When it comes to service, the basic requirement is that the "notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* at 314.

{¶ 15} The "reasonably calculated" requirement is the measuring stick we use to determine whether service was sufficient under open-ended service rules. For instance, in *Knickerbocker Properties, Inc., XLII v. Delaware Cty. Bd. of Revision*, 2008-Ohio-3192, this court considered whether a board of revisions had complied with R.C. 5715.12 and 5715.19(C), which require the board to notify a property owner of the filing of a complaint to increase the property's value and of the time and place of any hearing on the matter. *Id.* at ¶ 15, 19. Much like Civ.R. 4.1(A)(1)(a), "neither [R.C. 5715.12 nor R.C. 5715.19(C)] specifies what address ought to be used" to provide notice, *id.* at ¶ 17. We explained that in the absence of statutory guidance, "the constitutional due process principle supplies the rule" for determining whether service to a particular address complies with the statutes in question. *Id.* So too here. The rule of civil procedure governing service—here,

Civ.R. 4.1(A)(1)(a)—does not specify the address to be used, so courts must apply due-process principles to determine whether service was sufficient.

{¶ 16} Because service under Civ.R. 4.1(A)(1)(a) must comport with due-process guarantees, sufficient service requires using an address that is reasonably calculated to apprise the defendant of the lawsuit.

{¶ 17} Before considering whether the service in this case was sufficient, we take a detour to discuss the Hunts' and the dissenting opinion's misapprehension of the issue before the court. As indicated by the Hunts' first proposition of law, they view the question in the case as whether their service to the wrong address deprived Alderman of due process. The dissent frames the case similarly and offers a full-throated explanation for why it would determine that Alderman had notice and an opportunity to be heard. The confusion is understandable: the trial court's decision mistakenly separated the determination whether service was reasonably calculated to reach Alderman from the determination whether Civ.R. 4.1(A)(1)(a) was satisfied. But as our discussion above makes clear, this court has borrowed the "reasonably calculated" standard to fill in the gaps of Civ.R. 4.1(A)(1)(a)—to provide the "to whom" and "where" for the rule. Thus, whether service was reasonably calculated to reach Alderman is not "immaterial," as the dissenting opinion proclaims, dissenting opinion, ¶ 32. Rather, that is the question we must answer to determine whether the service in this case was sufficient such that the Hunts' action was timely commenced.[1]

---

1. It is telling that many of the cases cited by the dissent are cases asking whether a party's due-process rights were violated. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010); *United States v. Finley*, 835 F.2d 134 (6th Cir. 1987); *Sixarp, L.L.C. v. Byron Twp.*, 2025 WL 921773 (Mich. Mar. 26, 2025); *Jones v. Flowers*, 547 U.S. 220 (2006). In those cases, whether actual or constructive notice was received and whether the party had the opportunity to be heard are relevant issues. But none of those cases ask the question at issue here—was service sufficient to timely commence an action?

*B. Service to a defendant's former residence*
*is not reasonably calculated to reach the defendant*

{¶ 18} Turning to that question, then, we consider whether service of process to Alderman's former residence satisfied the "reasonably calculated" requirement. This court addressed the matter of acceptable addresses for service in *Akron-Canton Regional Airport*, 62 Ohio St.2d 403. There, the summons was sent to a defendant's business address that the defendant visited only a few days each month. *Id.* at 407. Observing that the text of Civ.R. 4.1(1) (now numbered Civ.R. 4.1(A)(1)(a)) neither provides for nor prohibits service to a business address, the court next considered "whether due process proscribes service by certified mail to individuals at their business address." *Id.* at 405-406. The court concluded that service to a business address would satisfy due-process requirements if "successful notification could be reasonably anticipated" at that address, *id.* at 406, but that service to an infrequently used business address failed that standard, *id.* at 407.

{¶ 19} Likewise, in *In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333 (1980), this court considered whether service of notice of tax foreclosure of a property to an address other than the property owner's residence was sufficient. The statute governing the procedures for tax foreclosures provided that notice of a tax foreclosure must be sent by the treasurer "to the address" of each property owner named in the complaint, without specifying whether the address must be the residential address. *Id.* at 335, citing R.C. 5721.18(B). Notice was sent to the property owner's former residence even though the treasurer knew that the property owner had moved. *Id.* at 337-338. Because the treasurer "had actual knowledge of a different, and, indeed, a changed, residence address," (emphasis deleted) notice was not "'reasonably calculated' to reach the [property owner] when mailed to the older residence now used as investment property." *Id.* at 338.

{¶ 20} We conclude that service to Alderman's former residence did not satisfy the due-process requirement that service be reasonably calculated to reach

the defendant. The circumstances here are even more clear cut than those in *In re Foreclosure* (service to an investment property owned by the defendant was inadequate when plaintiff had notice of defendant's current residential address) and *Akron-Canton Regional Airport* (service to the defendant's business address was inadequate). Alderman did not own, live, or work at the service-address property and, indisputably, the Hunts were on notice of Alderman's address change. Although Alderman's father owned the property where service was mailed, he rented it to third parties. There is no evidence that Alderman received mail there, and his father's tenants were under no obligation to forward the summons to Alderman. That the summons eventually reached Alderman—after passing through three sets of hands—was pure happenstance. Service to Alderman's former residential address under these circumstances was not reasonably calculated to provide notice, so it was insufficient.

### C. A defendant's eventual receipt of summons does not obviate the requirement that the plaintiff comply with due process

{¶ 21} The Hunts contend that due process of law and its "reasonably calculated to give notice" standard are relevant only if the defendant never received the summons. As discussed above, this contention reflects a misunderstanding of the question before us. That Alderman eventually received notice of the action against him does not change the fact that the plaintiffs failed to satisfy their burden to ensure that service was reasonably calculated to reach him. The service thus was insufficient, and so the action was not timely commenced. *See* Civ.R. 3(A).

{¶ 22} This court has steadfastly held to the principle that the reasonably calculated standard governs sufficiency of service. That principle guides the analysis of a service attempt's sufficiency whether the defendant received actual notice, *see Mitchell v. Mitchell*, 64 Ohio St.2d 49, 52 (1980) (applying "reasonably calculated" standard when the defendant had "never asserted that she was unaware of the pendency of the action"), or not, *see Knickerbocker Properties*, 2008-Ohio-

3192, at ¶ 1-3, 17 (applying reasonably calculated standard to determine whether service to outdated address complied with statutory service requirements when actual notice was not timely received). And as we recently reaffirmed, a defendant's knowledge of a pending lawsuit does not alleviate the plaintiff's burden to ensure sufficient service to the defendant.[2] *Ackman*, 2024-Ohio-3159. "'The obligation is upon plaintiffs to perfect service of process; defendants have no duty to assist them in fulfilling this obligation.'" *Id.* at ¶ 15, quoting *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 2007-Ohio-3762, ¶ 16 (which cited *Maryhew v. Yova*, 11 Ohio St.3d 154, 159 (1984)).

{¶ 23} Successful service has implications for litigation beyond providing notice to defendants. For example, "perfection of service must take place before determining whether a[n] . . . action was filed within the statute-of-limitations period." *Id.* at ¶ 18. And it is the starting point for the 28-day answer period after which, if no answer is filed, the plaintiff is entitled to default judgment. Civ.R. 12(A) and 55(A). Permitting the defendant's receipt of actual notice to remedy a service attempt that otherwise would not pass muster creates uncertainty. When did the action in such a case commence—on the date the certified mail was delivered? That cannot be the answer, because service was inadequate until actual notice was received. What about the date the summons was placed in the defendant's hands? This would be more sensible, but—as this case illustrates—the date on which a summons happens to be informally handed to a defendant is often uncertain, unlike the date on which certified mail is delivered or personal service under the rules is completed. Staying true to our recently reaffirmed precedent and

---

2. The dissent questions why we look only to whether service was reasonably calculated to reach the defendants and not to whether the defendant received actual notice. *See* dissenting opinion at ¶ 57. As we have discussed, the question in this case is not whether Alderman's due-process rights were violated. That inquiry would require consideration of whether he received actual notice. Instead, the question we are answering here is whether service—when Hunt attempted it—was sufficient. Whether notice was actually received is not part of this inquiry.

keeping on the plaintiff the burden of ensuring sufficient service eliminates this problem.

{¶ 24} The Hunts insist that Alderman was not prejudiced, because he was handed the summons within weeks of the complaint's filing. True, the summons found its way to Alderman in slightly less than a month. But Alderman had just "twenty-eight days after service of the summons and complaint" to file an answer, Civ.R. 12(A)(1). And certified-mail service is "[e]videnced by return receipt signed by any person accepting delivery." Civ.R. 4.1(A)(1)(a). So if the service attempt in this case was sufficient, Alderman had 28 days from the day McCullough signed the return receipt, which she did on May 6, 2019, to file his answer; that means he would have had until Monday, June 3, 2019, to file his answer. At best, Alderman received the summons and complaint on June 1 (which was a Saturday)—meaning he would have had at most just two days to retain counsel and prepare an answer. The Hunts' claim of lack of prejudice is questionable at best. And in any event, a showing of prejudice and lack of actual knowledge have never been required for a challenge to service to be successful. *See Ackman* at ¶ 11-12 (a party's receiving actual notice and actively participating in the litigation does not amount to a forfeiture of an insufficient-service-of-process argument).

### III. CONCLUSION

{¶ 25} Service to Alderman's former residence was insufficient because it was not "reasonably calculated" to reach him. The trial court correctly granted judgment to Alderman. We therefore affirm the judgment of the Ninth District Court of Appeals.

Judgment affirmed.

_____

**KENNEDY, C.J., joined by BRUNNER, J., dissenting.**

{¶ 26} There is no real dispute in this case that service of process on appellee, Robert Alderman Jr., comported with Civ.R. 4.1(A)(1)(a) as that rule is

written. The rule describes a method of service of process—certified mail—and appellants, Miguel and Michelle Hunt, were successful in using that method of service: the certified mail was signed for by a person accepting delivery at the address the Hunts provided. Civ.R. 4.1(A)(1)(a). As the majority recognizes, Civ.R. 4.1(A)(1)(a) does not say where or to whom process must be served; instead, "[t]he *text* of the rule leaves open-ended the specific address to which the summons must be sent." (Emphasis added.) Majority opinion, ¶ 12. So even the majority understands that from a textual perspective, the Hunts complied with Civ.R. 4.1.

{¶ 27} Rather than stop there, the majority abandons textualist principles in order "to fill in the gaps of Civ.R. 4.1(A)(1)(a)." Majority opinion at ¶ 17. Reading between the lines of the rule, it says that the rule itself implicitly requires that process be served in a way that gives notice "reasonably calculated" to reach Alderman. It construes the rule to incorporate one part of the due-process standard for evaluating the adequacy of notice.

{¶ 28} There are two things wrong with the majority's analysis. First, and most obvious, the words "reasonably calculated" are nowhere to be found in Civ.R. 4.1. And if the rule should say that, then amendment by judicial misinterpretation is not the answer; the Ohio Constitution provides a procedure to amend rules of practice and procedure. Ohio Const., art. IV, § 5(B). Second, when the majority grafts due-process principles onto the rule, it does so only halfway—it contends that the rule always requires notice reasonably calculated to reach the defendant when, as I will explain, due-process is satisfied by *actual* notice.

{¶ 29} Of course, due process has its place in evaluating the sufficiency of service. But in my view, the review is a two-step process. First, we ask whether service comported with Civ.R. 4.1 *as written* in its "open-ended" text. Second, the court considers whether service satisfied due process.

{¶ 30} As for the first step, service on Alderman complied with Civ.R. 4.1(A)(1)(a), because the summons was sent by certified mail to the address the Hunts provided and a person at that address signed for it.

{¶ 31} As for the second step, the hallmark components of due process are notice and an opportunity to be heard, and notice has two forms: actual notice and constructive notice. It is self-evident that actual notice of a proceeding meets the due-process requirement of notice. Constructive notice is also sufficient to satisfy due process, so long as it is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). So, for service to comport with due process, a person must receive *either* actual notice of litigation *or* notice reasonably calculated to reach him or her.

{¶ 32} In this case, Alderman received actual notice of a lawsuit brought against him. Whether that notice was reasonably calculated to reach him is therefore immaterial. And he had an actual opportunity to be heard—he answered the complaint and has litigated the case against him on the merits. There is no question that the requirements of due process have been satisfied here.

{¶ 33} For these reasons, I would reverse the judgment of the Ninth District Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion. Because this court does otherwise, I dissent.

**Background**

{¶ 34} I agree with the majority's recitation of the facts but believe that there are additional facts critical to understanding this case. It is undisputed that the Hunts directed service to Alderman's former address in Cuyahoga Falls, that a tenant living at the residence, Kayla McCullough, signed the certified-mail receipt, and that the post office returned the receipt to the clerk of courts, indicating successful service. After receiving the complaint and summons, Alderman filed an

answer and moved for summary judgment on the merits of the Hunts' claims, arguing that he had coworker immunity under R.C. 4123.741. The trial court denied Alderman's first motion for summary judgment.

**{¶ 35}** One day later, Alderman filed his second motion for summary judgment based on the failure to obtain service within one year as required by Civ.R. 3(A). The trial court found that service on Alderman complied with Civ.R. 4.1(A)(1)(a) and that this court's order tolling filing deadlines during the COVID-19 pandemic extended the one-year period for perfecting service under Civ.R. 3(A). The trial court nonetheless granted summary judgment in favor of Alderman, concluding that service was not reasonably calculated to give notice of the lawsuit to him. The court of appeals affirmed. Consequently, if service on Alderman was consistent with Civ.R. 4.1(A)(1)(a) and due process, then the Hunts timely commenced this action under Civ.R. 3(A) and the court of appeals' judgment should be reversed.

**{¶ 36}** With this understanding of the facts, this opinion now turns to the legal issue at hand—whether service of process on Alderman comported with Civ.R. 4.1 and with due process.

**Law and Analysis**

*Civil Rule 4.1(A)(1)(a)*

**{¶ 37}** Civ.R. 4.1(A)(1)(a) authorizes the following method of service of process:

> Service by United States certified or express mail. Evidenced by return receipt signed by any person accepting delivery, service of any process shall be by United States certified or express mail unless otherwise permitted by these rules. The clerk shall deliver a copy of the process and complaint or other document to be served to the United States Postal Service for mailing at the

14

address set forth in the caption or at the address set forth in written instructions furnished to the clerk as certified or express mail return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered.

{¶ 38} As the majority points out, the rule is "open-ended" when it comes to where service of process must be directed, majority opinion at ¶ 12, and the rule might be satisfied by serving a summons pretty much anywhere. Recognizing the potential constitutional infirmity of this procedure, the majority construes the rule to incorporate due-process protections. It therefore reads the rule to require that service of process be "reasonably calculated" to reach the defendant.

{¶ 39} Maybe that is something that Civ.R. 4.1(A)(1)(a) *should* say. The problem is that it does not—the words "reasonably calculated" are nowhere to be found in the rule. In fact, the majority admits that it is "fill[ing] in the gaps of Civ.R. 4.1(A)(1)(a)," majority opinion at ¶ 17. But "[w]hat is a *gap* anyway? . . . [I]t is the space between what the statute [or other text] provides and what the gap-finding judge thinks it should have provided. . . . What has been omitted in the *gap* invariably turns out to be what the judge believes desirable—so gap-filling ultimately comes down to the assertion of an inherent judicial power to write the law." (Emphasis in original.) Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 95 (2012). Put another way, gap-filling squeezes the text into submission, compelling it to speak the words the judge wants to hear. This is not the textualist approach.

{¶ 40} But more fundamentally, if this court mistakenly left "gaps" when adopting Civ.R. 4.1, the cure is to formally amend the rule using the procedure provided in Article IV, Section 5(B) of the Ohio Constitution—not to make an end run around the Constitution through amendment by judicial misinterpretation. The

General Assembly has veto power over the rules of practice and procedure we propose, so as Justice Antonin Scalia and Bryan A. Garner have aptly noted, "[j]udicial amendment flatly contradicts democratic self-governance," *Reading Law* at 96. Judicial amendment denies the most democratic branch of government its constitutionally given prerogative to review our rules.

**{¶ 41}** The majority's focus on the question whether the service of process in this case complied with the Civil Rules is understandable. This court has said that "it is an established principle that actual knowledge of a lawsuit's filing and lack of prejudice resulting from the use of a legally insufficient method of service do not excuse a plaintiff's failure to comply with the Civil Rules." *LaNeve v. Atlas Recycling, Inc.*, 2008-Ohio-3921, ¶ 22. That statement may or may not be true. But in any case, the words "reasonably calculated" do not appear in *LaNeve*, and *LaNeve* does not support the proposition that Civ.R. 4.1 incorporates the reasonably calculated standard by implication.

**{¶ 42}** In contrast, *Knickerbocker Properties, Inc., XLII v. Delaware Cty. Bd. of Revision*, 2008-Ohio-3192, does provide some support for the majority's position. But in that case, this court made the same mistakes that the majority makes today. First, it misinterpreted *Akron-Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403 (1980), as saying that due process fills the gaps in the service rules. *See Knickerbocker Properties* at ¶ 17. But under any fair reading, *Akron-Canton Regional Airport Auth.* does not say that. Second, the court in *Knickerbocker Properties* engaged in the same antitextualist endeavor that most modern jurists avoid—filling in the gaps. So, while *Knickerbocker Properties* is supportive of the majority's position, it is not persuasive.

**{¶ 43}** In my view, reviewing the sufficiency of service is a two-step process. We first ask whether service of process complied with Civ.R. 4.1 (as it is written, in its open-ended way). Here, service complied with the rule because the summons was sent by certified mail to the address the Hunts provided and the

certified mail was signed for by a person at that address. *See* Civ.R. 4.1(A)(1)(a). As the majority acknowledges, the rule does not say where or to whom process must be served, majority opinion at ¶ 13.

{¶ 44} Next, we ask whether service satisfied due process. This opinion now turns to that question.

*The Due Process Clause of the Fourteenth Amendment*

{¶ 45} The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. Due process ensures the "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

{¶ 46} "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976), quoting *Joint Anti-Fascist Refugee Commt. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring). As long ago as 1902, this court recognized that without "[r]easonable notice, and an opportunity to be heard in defense or opposition," there is no due process of law. *Chicago & Erie RR. Co. v. Keith*, 67 Ohio St. 279, 291 (1902).

{¶ 47} Accordingly, due process has two requirements before a person may be deprived of life, liberty, or property: notice and an opportunity to be heard. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

*Notice*

{¶ 48} The first element of due process is notice. And there are two types of notice: actual notice and constructive notice.

{¶ 49} The Supreme Court has recognized that actual notice satisfies the notice requirement of due process. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). In *Espinosa*, a debtor proposed a bankruptcy plan

discharging the accrued interest on his student loans without initiating an adversary proceeding as required by the bankruptcy rules. The bankruptcy court mailed notice of the plan to the creditor, who failed to object, and the bankruptcy court confirmed the plan. *Id.* at 264-265. Years later, the creditor challenged the discharge, arguing that the court had violated its due-process rights because the creditor had not received formal service of a complaint and summons. *Id.* at 265-266. The Supreme Court flatly rejected the creditor's argument, holding that actual notice of the bankruptcy proceedings "more than satisfied" due-process requirements. *Id.* at 272. The Court did not inquire into whether the notice had also been reasonably calculated to reach the creditor.

{¶ 50} However, due process does not require that a person receive actual notice before a judgment may be entered against him or her. *Dusenbery*, 534 U.S. at 169-171. Instead, the Supreme Court has recognized that constructive notice can be constitutionally sufficient notice. It has explained that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Emphasis added.) *Mullane*, 339 U.S. at 314.

> The means employed [for providing notice] must be such as one
> desirous of actually informing the absentee might reasonably adopt
> to accomplish it. The reasonableness and hence the constitutional
> validity of any chosen method may be defended on the ground that
> it is in itself reasonably certain to inform those affected . . . or, where
> conditions do not reasonably permit such notice, that the form
> chosen is not substantially less likely to bring home notice than other
> of the feasible and customary substitutes.

18

*Id.* at 315.

{¶ 51} The "reasonably calculated" standard is the standard that applies to determine whether constructive notice is constitutionally adequate, and that standard "is fairly low," *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008). It is a floor, not a ceiling. That is, notice that meets the reasonably calculated standard is a "minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party." (Emphasis deleted.) *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983). When a party does not receive actual notice, the lesser reasonably calculated standard applies.

{¶ 52} But when a party receives actual notice of pending litigation, the reasonably calculated standard is immaterial. *See DeJoria v. Maghreb Petroleum Exploration, S.A.*, 804 F.3d 373, 387 (5th Cir. 2015); *United States v. Finley*, 835 F.2d 134, 138 (6th Cir. 1987); *see also Espinosa*, 559 U.S. at 272. It is relevant only in determining whether constructive notice was achieved. Because due process does not require actual notice before a judgment may be entered, and because actual notice is better than constructive notice, actual notice satisfies due process. *See Espinosa*, 553 F.3d at 1203; *Sixarp, L.L.C. v. Byron Twp.*, 2025 WL 921773, *11 (Mich. Mar. 26, 2025). As the United States Court of Appeals for the Ninth Circuit has explained, "the argument that the Constitution requires something *more* than actual notice [is] strained to the point of the bizarre." (Emphasis in original.) *Espinosa*, 553 F.3d at 1203.

{¶ 53} When the Supreme Court has applied the reasonably calculated standard, it has been when a party claimed not to have received actual notice. For example, in *Jones v. Flowers*, 547 U.S. 220, 234-235 (2006), the Court held that the state should have taken additional reasonable steps to notify a property owner of a tax sale when the certified-mail notice was returned unclaimed. In *Dusenbery*, 534 U.S. at 166, 168-170, notice of a property forfeiture was sent by certified mail

to a prisoner at the prison in which he was incarcerated, and the letter was signed for by prison employees; the Court applied the reasonably calculated standard when, five years after the property had been deemed forfeited, the prisoner sought return of his property and claimed he had never received the notice letter. In *Greene v. Lindsey*, 456 U.S. 444, 453-454, 449-450 (1982), the Court determined that the notices of eviction proceedings did not meet the reasonably calculated standard when it was known by the process servers that the notices were removed from the tenants' doors before the tenants had seen them. In *Robinson v. Hanrahan*, 409 U.S. 38, 39-40 (1972), the Court held that a notice of forfeiture sent by the state to a person's home was insufficient when the state knew he was in jail; it was undisputed that the person did not receive the notice until he was released from jail more than three months later. *See also Bank of Marin v. England*, 385 U.S. 99, 100, 102 (1966); *Schroeder v. New York*, 371 U.S. 208, 210-211 (1962); *Walker v. Hutchinson*, 352 U.S. 112, 114-115 (1956).

{¶ 54} The majority relies on *Akron-Canton Regional Airport Auth.*, 62 Ohio St.2d 403. But in that case, too, one of the defendants who owned an interest in the subject property did not receive actual notice of the action seeking to deprive the owners of their interest, so the reasonably calculated standard applied. *Id.* at 403-404, 407. And because one of the defendants who owned an interest in the jointly held subject property had not received actual notice or notice reasonably calculated to reach him, it did not matter to the court whether the other defendant had received sufficient notice. *Id.* at 407.

{¶ 55} The majority also points to *In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333 (1980). Majority opinion at ¶ 19. In that case, the property owner had no actual notice of a tax foreclosure, *id.* at 334, and this court held that notice mailed to the property being foreclosed rather than to the address where the owner was known to live was not reasonably calculated to reach him, *id.* at 337-338. Similarly, in *Knickerbocker Properties*, 2008-Ohio-3192, the property

owner "complain[ed] that it did not receive notice of the hearing" at which its property was valued, *id*. at ¶ 1-2.

{¶ 56} The majority cites *Mitchell v. Mitchell*, 64 Ohio St.2d 49, 52 (1980), for the proposition that this court has applied the reasonably calculated standard even "when the defendant had 'never asserted that she was unaware of the pendency of the action,'" majority opinion at ¶ 22. But saying that the defendant had not claimed to be unaware is not the same thing as saying that "the defendant received actual notice," as the majority claims. *Id.* And the fact that *Mitchell* is the best the majority has to offer illustrates how strained its reasoning is.

{¶ 57} Lastly, it is worth noting that if the majority is correct that Civ.R. 4.1 incorporates due-process protections, then actual notice satisfies the rule and the Due Process Clause. The majority never persuasively explains why the Civil Rules would incorporate only half of the due-process analysis.

{¶ 58} Alderman had actual notice of the proceedings against him. That was more than enough to meet the notice requirement of due process. The next question is whether he had an opportunity to be heard.

*Opportunity to Be Heard*

{¶ 59} The second "'fundamental requisite of due process of law is the opportunity to be heard.'" *Mullane*, 339 U.S. at 314, quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). How this requirement was met in this case needs only a brief discussion.

{¶ 60} In *Boddie v. Connecticut*, 401 U.S. 371 (1971), the Court explained that due process requires that a person be given an opportunity to be heard before a state deprives the person of life, liberty, or property by adjudication. *Id.* at 377-378. And while the Court noted that the hearing that is required varies based on the circumstances of the case, it concluded that due process requires "'an opportunity . . . granted at a meaningful time and in a meaningful manner,' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)

. . . , 'for (a) hearing appropriate to the nature of the case,' *Mullane v. Central Hanover Bank & Trust Co.*, supra, 339 U.S. at 313, 70 S.Ct. at 657." *Boddie* at 378. Therefore, after receiving notice by service of process, a litigant must receive "a meaningful opportunity to be heard if [the state] is to fulfill the promise of the Due Process Clause." *Id.* at 379.

{¶ 61} And just as actual notice satisfies the requirement that a litigant receive notice, it is manifest that actually appearing and actively defending against a lawsuit satisfies the requirement that a litigant have an opportunity to be heard. *See, e.g.*, *Avant Capital Partners, L.L.C. v. Strathmore Dev. Co. Michigan, L.L.C.*, 703 Fed.Appx. 362, 373 (6th Cir. 2017). It is true, as the majority points out, that Alderman filed his answer late. Majority opinion at ¶ 8. And it may also be true that he had to hustle to find counsel and prepare his defenses. But neither of those things hampered his ability to litigate this case on the merits. As noted above, Alderman first moved for summary judgment based on an immunity defense—a merits-based defense. Only after he lost on that issue did he pull the insufficient-service defense like a rabbit from a hat.

{¶ 62} Because Alderman admittedly received the summons and complaint, filed an answer, and fully litigated his case—i.e., he received actual notice and had a meaningful opportunity to be heard—the constitutional inquiry ends.

### Conclusion

{¶ 63} The Due Process Clause protects the people in this country from the government's arbitrarily depriving them of life, liberty, or property. And a core safeguard provided by the Due Process Clause is that it prohibits those types of deprivation unless they are preceded by notice and an opportunity to be heard. Those principles govern whether the service methods permitted by the Civil Rules are constitutional.

{¶ 64} Here, Alderman had actual notice that a lawsuit had been filed against him, and he took advantage of his opportunity to be heard by challenging

the complaint on its merits. In these circumstances, neither Civ.R. 4.1 nor due process required more, and the majority is wrong when it says that constructive notice—notice reasonably calculated to reach Alderman—was also required notwithstanding that Alderman knew about the litigation against him.

{¶ 65} Accordingly, I dissent. I would reverse the judgment of the Ninth District Court of Appeals and remand the matter to the trial court for further proceedings consistent with this opinion.

_____

Stark & Knoll and David P. Bertsch, for appellants.

Elliot Kolkovich, Summit County Prosecuting Attorney, and John F. Galonski, Marrett Hanna, and Aaron B. Campbell, Assistant Prosecuting Attorneys, for appellee.

_____