[Cite as *Edelstein v. Edelstein*, 2025-Ohio-4686.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ELIOTT EDELSTEIN, | : | APPEAL NO. C-240626 |
| | | TRIAL NO. DV-2400381 |
| Petitioner-Appellee, | : | |
| vs. | : | *JUDGMENT ENTRY* |
| KIMBERLY EDELSTEIN, | : | |
| Respondent-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To The Clerk:**

**Enter upon the Journal of the Court on 10/10/2025 per Order of the Court.**

**By:**_____
       **Administrative Judge**

[Cite as *Edelstein v. Edelstein*, 2025-Ohio-4686.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


ELIOTT EDELSTEIN,                          :

    Petitioner-Appellee,              :

vs.                                         :

KIMBERLY EDELSTEIN,                        :

    Respondent-Appellant.             :

                                      :


APPEAL NO.   C-240626
TRIAL NO.    DV-2400381


*O P I N I O N*


Civil Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 10, 2025


*Eliott Edelstein,* pro se,

*Kimberly Edelstein,* pro se.

**NESTOR, Judge.**

{¶1} This appeal stems from ongoing divorce litigation between respondent-appellant Kimberly Edelstein and petitioner-appellee Eliott Edelstein. After Kimberly repeatedly violated the trial court's stay-away order and allegedly made Eliott fear for his safety, Eliott petitioned the court for a Domestic Violence Civil Protection Order ("DVCPO"). The court first issued an ex parte order and then a final order after an evidentiary hearing.

{¶2} Kimberly maintains the trial court lacked jurisdiction to issue the DVCPO and, in granting the order, improperly weighed the evidence. However, because Kimberly waived the defense of lack of personal jurisdiction and because the trial court's findings were supported by competent, credible evidence, we cannot say the trial court erred by granting the DVCPO. Therefore, we overrule Kimberly's eight assignments of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶3} The couple married in 2002. The parties later divorced, and Eliott received sole custody of S.E., the couple's son. As part of the divorce decree, the court ordered Kimberly to stay away from S.E. until further order. Unfortunately, Kimberly chose not to comply, leading to this case.

{¶4} The domestic relations court granted the first DVCPO on August 26, 2022, and it expired on February 26, 2024. After Eliott filed for another DVCPO, an ex parte hearing was held on April 19, 2024, and the court granted the ex parte order. There, the court found,

> [Kimberly] is [Eliott's] ex-wife. [Kimberly] has an order in their divorce
> case prohibiting contact with the parties' minor son, S.E. Since [the]
> previous DVCPO expired in February, she has repeatedly contacted

3

[Eliott] in order to gain access to their son. She has sent many, many messages, she has shown up unannounced where [S.E.] was or was expected to be at least five times. This has all happened in just over six weeks. This caus[ed] mental distress for [S.E.] and he is in therapy due to the relationship with his mother and parental alienation. Both [Eliott] and [S.E.] [a]re in therapy as a result of Kimberly's actions and the mental distress it causes.

The court ordered Kimberly to surrender (1) her weapons, (2) any access to the Cincinnati residence, and (3) to stay away from and keep from having contact with Eliott or S.E.

{¶5} Kimberly maintains that she did not receive proper service of the petition and the ex parte order. But Eliott asserts that is because Kimberly purposefully evades service of the court's orders and other documents. On October 8, 2024, Kimberly appeared for the final hearing on the DVCPO and fully participated. On October 21, 2024, the court issued the final DVCPO, finding,

[Kimberly] has committed acts of domestic violence by stalking [Eliott] through the parties' child. [Kimberly] was ordered to have no contact with the parties' minor child, [S.E.] . . . in the parties' Decree of Divorce []. [Kimberly] repeatedly violates the Domestic Relations Court no-contact order. She has shown up at Respondent's [sic] home while he had the child with him, has secretly met with the child at a religious service, has sent dozens of letters and packages to the child at Respondent's [sic] address, has shown up at the child's camps and caregivers' homes, has sent the child secret messages, and more. Each of these acts causes [Eliott] to suffer emotional distress and causes him

to understandably fear for his safety because [Kimberly] continually refuses to follow Court Orders, the parties' marital relationship was violent at times, and [Kimberly] previously stalked [Eliott] at his workplace. In addition, he is fearful because [Kimberly] continues to claim the no-contact order is not valid even though the validity of the Decree of Divorce was confirmed by the First District Court of Appeals in its Entry dated 03/25/24. [Kimberly] is an attorney who should be cognizant of court rulings and her insistence on an alternate reality where the orders do not exist causes grave concern for her mental stability. Finally, [Eliott] believes that [Kimberly] ignored [the previous DVCPO orders] and did not surrender her weapon as ordered.

Kimberly, offering what she believes are justifiable explanations for her actions, disputes the court's reasoning for issuing the final DVCPO.

{¶6} The court also reasoned that although S.E. testified that Kimberly did not cause him mental distress, his testimony had little weight due to his "tender age" and previous enmeshment with Kimberly. The court found by a preponderance of the evidence that Eliott and Eliott's family or household members are in danger and have been victims of domestic violence as defined in R.C. 3113.31(A). The court echoed the magistrate's concerns in issuing the ex parte DVCPO, ordering Kimberly again to surrender her weapon, relinquish any access to the Cincinnati residence, and stay away from both Eliott and their minor child.

## II. Analysis

### A. First Assignment of Error

{¶7} In her first assignment of error, Kimberly asserts that the trial court failed to obtain personal jurisdiction because she never received sufficient service of

5

process of the petition and orders. She argues that without proper service, both the ex parte and final DVCPO are void. "[W]e review a trial court's finding [regarding whether] service of process was accomplished for an abuse of discretion. *Berhane v. Walmart, Inc.*, 2024-Ohio-3163, ¶ 15 (1st Dist.), quoting *Simpson v. Simpson*, 2024-Ohio-4, ¶ 29 (1st Dist.), citing *Belisle Constr. Inc. v. Perry*, 2022-Ohio-239, ¶ 22 (3d Dist.). An abuse of discretion occurs when a court "[exercises] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶8} The Ohio Supreme Court recently held that, "While Civ.R. 4.1(A)(1)(a) focuses on 'how service shall be made,' the specifics of 'where, or to whom[,] process may be served' are derived from due process guarantees." (Emphasis omitted.) *Hunt v. Alderman*, 2025-Ohio-2944, ¶ 13, citing *Akron-Canton Regional Airport*, 62 Ohio St.2d 403, 405 (1980). The Ohio Supreme Court stated, "Because service under Civ.R. 4.1(A)(1)(a) must comport with due-process guarantees, sufficient service requires using an address that is reasonably calculated to apprise the defendant of the lawsuit." *Alderman* at ¶ 16. We recognize, "It is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant." *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984).

{¶9} A court may acquire personal jurisdiction by (1) service of process on the defendant,[1] (2) the voluntary appearance and submission of the defendant, or (3) by certain acts of the defendant (or his counsel) which constitute an involuntary submission to the jurisdiction of the court. *Id.* The Ohio Supreme Court describes the

---

[1] When service cannot be perfected under Civ.R. 4.6(D), service by publication is appropriate. *Altman v. Parker*, 2022-Ohio-142, ¶ 17 (1st Dist.). Because this is a proceeding for a protection order, such publication could have been affected by posting at the courthouse.

6

final of these options as a waiver of affirmative defenses, such as personal jurisdiction, under the Rules of Civil Procedure. *Id.*

**{¶10}** Upon review, we conclude that Kimberly's appearance and participation in the final hearing constituted an involuntary submission to the jurisdiction of the court and waived insufficient service as an affirmative defense. We hold that Kimberly, by failing to raise the affirmative defense by motion prior to the hearing, waived it.

**{¶11}** Civ.R. 12(B) states:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter, (2) Lack of jurisdiction over the person, (3) Improper venue, (4) Insufficiency of process, (5) Insufficiency of service of process, (6) Failure to state a claim upon which relief can be granted, (7) Failure to join a party under Rule 19 or Rule 19.1.

Rule 12(H)(1) governs the waiver of affirmative defenses. Under 12(H)(1), "service-based affirmative defenses are waived 'if a motion is made raising other Civ.R. 12(B) defenses and [they are] not included in that motion or, if there is no such motion, if [they are] not raised by separate motion or included in the responsive pleading." *Ackman v. Mercy Health West Hosp., LLC*, 2023-Ohio-2075, ¶ 7 (1st Dist.), quoting *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 2007-Ohio-3762, ¶ 9.

**{¶12}** Kimberly participated in the final hearing and did not assert her defense by way of motion as required by the rules. Kimberly cites the Ohio Supreme Court's

7

holding in *Gliozzo* for the proposition that her participation in the proceeding does not constitute a waiver. We disagree with Kimberly's application of the *Gliozzo* holding to the facts here. In *Gliozzo*, the Ohio Supreme Court held that "when the affirmative defense of service of process is properly raised and properly preserved, a party's active participation in litigation of a case does not constitute waiver of that defense." *Gliozzo* at ¶ 11. This remains the law despite the procedural traps it creates. *See Ackman* at ¶ 9. While a party may waive insufficiency of process, the only way acknowledged by the Ohio Supreme Court in which a party may involuntarily submit to the court's jurisdiction is "by failing to raise the defense of insufficiency of service of process in a responsive pleading or by filing certain motions before any pleading." *Id.* In both *Ackman* and *Gliozzo*, the defendant raised the affirmative defense of insufficiency of service of process by including it in their answer. *Id.* Upon review of the record, Kimberly did not raise the defense in this case either by pleading or motion.

{¶13} In *Ackman*, we held that if a party makes a motion raising other Civ.R. 12(B) defenses and does not include the defense of insufficiency of process, then that defense is deemed waived. *Id.* at ¶ 7. We also held that if no such motion to dismiss exists, and the defenses are not raised by separate motion or responsive pleading, service-based defenses are waived. *Id.*

{¶14} Here, on April 26, 2024, Kimberly moved for a continuance because the final DVCPO hearing was scheduled during a religious holiday. She explained that she did not have time to prepare and needed more time. In passing, she mentioned that she did not receive proper service, but her motion to continue did not preserve the defense or move the court to dismiss the case. Furthermore, while she objected to the court's jurisdiction during the final DVCPO hearing, she never moved for a dismissal, and she actively participated in the hearing.

8

**{¶15}** We conclude that Kimberly failed to properly raise or preserve the defense of insufficiency of process and actively participated in the case. This constitutes a waiver of the defense. Kimberly fully participated in the final DVCPO hearing by admitting exhibits, presenting witnesses, and offering evidence in support of her case. Here, Kimberly did not properly preserve the service issue like in *Ackman* and *Gliozzo*. Kimberly's active participation in the proceedings constitutes waiver of insufficiency service of process as an affirmative defense. Therefore, the court did not err by failing to obtain personal jurisdiction and did not abuse its discretion in proceeding to judgment. Accordingly, we overrule Kimberly's first assignment of error.

### B. Second, Third, and Fourth Assignments of Error

**{¶16}** We consider Kimberly's second, third, and fourth assignments of error together as each relates to Kimberly's argument that the trial court erred by issuing a two-year DVCPO. When reviewing a trial court's issuance of a DVCPO, the standard of review depends on the nature of the challenge asserted. *Denney v. Sanders*, 2016-Ohio-5113, ¶ 16 (1st Dist.) (citing cases). Where an appellant challenges the weight or sufficiency of the evidence, we use a manifest-weight or a sufficiency standard of review, respectively. *Id.* But when an appellant challenges the scope of the order, the proper standard of review is an abuse of discretion. *Id.*

**{¶17}** Here, Kimberly challenges the weight and sufficiency of the evidence to support the trial court's issuance of the DVCPO. Thus, the proper standards of review are manifest weight and sufficiency.

**{¶18}** R.C. 3113.31 governs the issuance of a DVCPO. To obtain a DVCPO, the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against the petitioner, petitioner's family, or

household members. R.C. 3113.31(A)(1) defines domestic violence as "placing another person by the threat of force in fear of imminent serious physical harm or committing a violation" of R.C. 2903.211 or R.C. 2911.211.

{¶19} R.C. 2903.211 is Ohio's "menacing by stalking" statute and it states that,

[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2903.211(A)(1). We previously held that it is sufficient under R.C. 2903.211(A)(1) to demonstrate either that actual mental distress was caused or that "an offender, by engaging in a pattern of conduct, knowingly caused the victim to believe that the offender would cause the victim mental distress." *Griga v. Dibenedetto*, 2012-Ohio-6097, ¶ 13 (1st Dist.).

{¶20} In *Mullen*, we found that competent, credible evidence existed from which the trial court could have determined that the respondent, Hobbs, had caused the petitioner, Mullen, and her daughter to believe that they would suffer mental distress. *Mullen v. Hobbs*, 2012-Ohio-6098, ¶ 19 (1st Dist.). In *Mullen*, Mullen

became the sole legal custodian and residential parent of the child. *Id.* at ¶ 20. Hobbs, contrary to the custody order, maintained that she was the child's mother and that Mullen could not control when Hobbs got to see the child. *Id.*

**{¶21}** Mullen was afraid that Hobbs would take the child or would harm Mullen or the child. *Id.* There was also testimony that Hobbs showed up unannounced to the child's school on the first day of school. *Id.* at ¶ 21. Even after repeated attempts by Mullen to warn Hobbs that Hobbs's behavior was unacceptable, Hobbs contacted the child twice more within a couple of weeks. *Id.* at ¶ 22. We held that this testimony was sufficient to determine that competent, credible evidence supported the conclusion that Hobbs had caused Mullen and the child to believe that they would suffer mental distress. *Id.* at ¶ 23.

**{¶22}** Similarly, in *Griga*, the respondent, DiBenedetto, made phone calls and visits to Griga's (the petitioner's) place of employment. *Griga*, 2012-Ohio-6097, at ¶ 17 (1st Dist.). Consequently, we held that there was sufficient evidence to hold that DiBenedetto knowingly caused Griga to believe that DiBenedetto would cause him mental distress. *Id.*

**{¶23}** R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). In *Mullen*, Mullen testified that she made it clear to Hobbs that she did not want Hobbs to see or speak to the child. *Mullen* at ¶ 25. Nonetheless, Hobbs showed up at the school on multiple occasions and contacted Mullen by email stating that she "[did not] need approval to visit the school" and would not abide by Mullen's wishes. *Id.* We held that this evidence was sufficient to determine that Hobbs acted knowingly. *Id.* at ¶ 26.

{¶24} Here, evidence in the record demonstrates that Kimberly's patterns of conduct are similar to those of the respondents in both *Mullen* and *Griga*. Kimberly, by engaging in a pattern of conduct, knowingly caused Eliott to believe that he would suffer mental distress. The trial court heard testimony that Kimberly, through numerous violations of the no-contact order, acted in ways that could be seen as a violation of R.C. 2903.211(A)(1), which constitutes domestic violence under R.C. 3113.31(A). Like the respondent in *Mullen*, Kimberly was ordered to have no contact with S.E., the couple's minor child. Kimberly continually violated the stay-away order. She showed up to Eliott's home unannounced. On one occasion, Kimberly allegedly snuck up from the side of the house and approached Eliott and S.E. Kimberly also showed up to a synagogue and secretly met with the child, allegedly in a closet. She also sent "dozens" of letters and packages to the child.

{¶25} Further, Kimberly also showed up to S.E.'s camps and S.E.'s caregivers' homes, leaving Eliott stressed about Kimberly's contact with caregivers. Kimberly also attempted to send S.E. secret messages, some of which were hidden inside of items given to S.E. The court also heard testimony that Kimberly previously stalked Eliott at his workplace, similar to the respondent's actions in *Griga*. Eliott testified that because of Kimberly's actions, and the fact that the parties' relationship grew violent at times, he feared for his safety.

{¶26} Consistent with our previous cases, the record supports the court's finding that Kimberly's repeated behaviors towards Eliott caused Eliott to fear for his and S.E.'s safety and that Eliott believed that he would suffer mental distress. Accordingly, the court's finding that Kimberly engaged in domestic violence is supported by sufficient evidence.

{¶27} Kimberly next argues that the trial court disregarded S.E.'s testimony

and did not give it due weight because of S.E.'s age and enmeshment with Kimberly. We defer to a trial court's credibility determinations because "the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use [those] observations in weighing the credibility of the proffered testimony." *Altman v. Parker*, 2022-Ohio-142, ¶ 21 (1st Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St. 3d 77, 80 (1984).

{¶28} Kimberly conflates the idea of a child's *ability* to testify with the court's decision to *discount* S.E.'s testimony because of his age and relationship with Kimberly. She argues that the court wholly disregarded S.E.'s testimony. But that argument is not supported by the record. The trial court allowed S.E. to testify, and after Kimberly violated repeated admonishments to stop "coaching" him, the court excused S.E. Furthermore, the court heard Eliott's testimony about Kimberly's actions and the effects of those actions on him and the child. The trial court, after considering both S.E.'s and Eliott's testimony, determined S.E.'s age and previous enmeshment with Kimberly justified discounting S.E.'s testimony. The weight to be given to a witness's testimony is well within the trial court's discretion, and we see no reason to disturb the court's credibility determination here.

{¶29} The final issue Kimberly raises is that the trial court erred by disregarding evidence of Eliott's alleged false statements under oath and failing to properly judge his credibility. Once more, credibility determinations are left to the trier of fact. Kimberly's arguments that the court improperly considered or lost its way in weighing the testimony presented at the final hearing are unfounded. Accordingly, we hold that the court's issuance of the two-year DVCPO was supported by sufficient evidence and not against the weight of the evidence. We therefore overrule Kimberly's second, third, and fourth assignments of error.

## C. Fifth Assignment of Error

**{¶30}** In her fifth assignment of error, Kimberly asserts that the trial court erred in quashing a subpoena for S.E.'s school records. "We apply an abuse-of-discretion standard to a trial court's decision concerning a motion to quash a subpoena." *State v. Findler*, 2021-Ohio-449, ¶ 15 (1st Dist.), citing *State v. Beck*, 2016-Ohio-8122, ¶ 23 (1st Dist.).

**{¶31}** On May 8, 2024, the trial court found that because Kimberly was a pro se litigant, and not an attorney on behalf of a party in the action, she was responsible for filing her subpoena with the clerk of courts. She failed to do so. Also, the court found that Kimberly did not properly serve the subpoena pursuant to Civ.R. 45(B). Because Kimberly did not follow the proper procedure in filing the subpoena, the court granted the motion to quash. The trial court has broad discretion over the discovery process. Accordingly, this was not an abuse of discretion, and we overrule her fifth assignment of error.

## D. Sixth Assignment of Error

**{¶32}** In her sixth assignment of error, Kimberly asserts that the trial judge had an ex parte communication with Eliott and refused to recuse herself. Throughout this appeal, Kimberly repeatedly challenges the Ohio Supreme Court's decision not to disqualify the assigned domestic relations judge and speculates that Eliott and the judge have had several ex parte communications. As the Ohio Supreme Court has held, an allegation that a judge participated in an improper ex parte communication "must be substantiated and consist of something more than hearsay and speculation." *In re Disqualification of Forsthoefel*, 2013-Ohio-2292, ¶ 7, citing *In re Disqualification of Floyd*, 2003-Ohio-7354, ¶ 7. We hold that Kimberly provided no such evidence here to substantiate her claim.

14

**{¶33}**  In refusing to disqualify the judge in this case, the Ohio Supreme Court found that the judge, for purposes of consistency, presides over evidentiary hearings for protection orders when she is the assigned judge.  The audio recording referenced by Kimberly in this case does not support a finding that Eliott improperly communicated by telephone with the judge or anyone else from the judge's office regarding the hearing.  Without substantiation from Kimberly to prove a claim of an improper ex parte communication, we cannot conclude that Eliott had any improper ex parte contact with either court staff or the judge.  Accordingly, there is no error, and we overrule Kimberly's sixth assignment of error.

### E.  Seventh Assignment of Error

**{¶34}**  In her seventh assignment of error, Kimberly asserts that the trial court erred by reviewing exhibits that were not properly admitted into the record and by not giving her an opportunity to object to those exhibits at the ex parte hearing.  First, Kimberly fails to acknowledge that the rules contemplate an initial ex parte hearing, outside of the presence of the responding party.  *See* R.C. 3113.31(D)(1).  Kimberly suffered no prejudice from not being able to object to the exhibits admitted at the ex parte hearing, because within the proper time period, the trial court held a full evidentiary hearing on Eliott's application for a DVCPO.

**{¶35}**  Second, with respect to Kimberly's argument that the court reviewed exhibits that were not properly admitted into evidence, we note that, in Ohio, relevant evidence is generally admissible.  Evid.R. 402.  The exceptions to this general rule are outlined in Evid.R. 403.  Evidence is relevant "when it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'"  *State v. Fritsch*, 2023-Ohio-2676, ¶ 11 (1st Dist.), quoting Evid.R. 401.  Moreover, "[r]elevant evidence is

admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *Fritsch* at ¶ 11., citing *State v. Brown*, 2012-Ohio-1848, ¶ 31 (2d Dist.), citing Evid.R. 402 and 403.

{¶36} Here, Eliott's testimony and exhibits were relevant to the DVCPO proceeding. Further, Kimberly has not demonstrated that the trial court relied on any exhibit admitted at the ex parte hearing to grant the final DVCPO. Accordingly, we overrule the seventh assignment of error.

### F. Eighth Assignment of Error

{¶37} In her eighth assignment of error, Kimberly asserts that the trial judge acted in a prejudicial manner towards her. She cites to 12 "actions" allegedly evidencing such behavior. This claim is baseless. Kimberly provides no evidence that the domestic relations judge acted in a prejudicial manner towards her and merely disagrees with the trial court's disposition of the proceeding. Accordingly, we find no error, and overrule Kimberly's eighth and final assignment of error.

### III. Conclusion

{¶38} Based on the foregoing, we overrule all eight assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.