**[Cite as *In re S.M.*, 2025-Ohio-5144.]**

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE S.M., ET AL. | : | |
| | | No. 114922 |
| A Minor Child | : | |
| | | |
| [Appeal by Mother, P.M.] | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD22913139 and AD22913140

---

### *Appearances:*

Brian A. Smith Law Firm, LLC and Brian A. Smith, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

MICHAEL JOHN RYAN, P.J.:

{¶ 1} P.M., mother of Sau. M. and Sah. M. ("Mother"), appeals from the juvenile court's February 2025 judgments (one for each child) granting the motion of plaintiff-appellee the Cuyahoga County Division of Children and Family Services

("CCDCFS" or "the Agency") to modify temporary custody to permanent custody. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} Initially, we note that Mother made the transcripts from the proceedings in the juvenile court part of the record on appeal. Our recitation of the facts are derived from the record filed, exclusive of the transcripts; the reason for us not reviewing the transcripts will be explained in the analysis portion of the opinion.

{¶ 3} The children came into the predispositional custody of CCDCFS on December 24, 2022. According to two reports filed by the children's guardian ad litem ("GAL"), sometime in November 2022, Mother took the two children to a friend for what was supposed to be a weekend. Mother never returned at the end of the weekend, however, and the children were at the friend's house for three weeks. During that three-week period, Mother did not answer calls from the friend and did not contact the friend or the children. The friend reported that during the time the children were with her, Mother posted pictures of herself on social media "partying." The friend was unable to continue caring for the children, and they were brought into the Agency's care on December 24, 2022.

{¶ 4} On December 27, 2022, the Agency filed a complaint alleging that the children were neglected and requesting an order for temporary custody to CCDCFS. The complaint was resolved when the children were adjudicated to be neglected and were committed to the temporary custody of the Agency. Temporary custody was extended in December 2023.

{¶ 5} In May 2024, CCDCFS filed a motion to modify temporary custody to permanent custody. The following facts are derived from the juvenile court's June 2024 semiannual review ("SAR"). Upon the Agency's involvement with the family, a case plan was developed for Mother to address mental-health, parenting, substance abuse, and consistent visitation. As of June 2024, Mother had not actively engaged in any of her case plan services.

{¶ 6} Mother had a history of untreated mental-health issues; she self-reported that she had been diagnosed as being bipolar. She refused to engage with her mental-health provider, however. Mother also did not make any progress toward starting or completing a parenting class.

{¶ 7} Mother had a history of substance abuse, and the oldest child was born with a positive toxicology screen for marijuana. Mother admitted that she drinks as a way to cope with stress. In 2020, Mother was charged with an OVI offense; both children were in the vehicle at the time of the alleged offense. The SAR indicated that Mother refused to complete a drug screen for the Agency, did not engage in substance use programs, and stated that she was not going to stop drinking.

{¶ 8} Mother was supposed to have weekly visits with the children, but she was not consistent with them and at the time the June 2024 SAR was prepared, she had only visited with the children twice in 2024. According to the GAL's February 2025 report, the older child had sadness about Mother's lack of engagement and the younger child had little memory of Mother.

**{¶ 9}** Sau. M.'s Father had no contact with either his child or the Agency during the pendency of this case. Sah. M.'s Father, E.A., was actively engaged with both of the children and the Agency for a majority of the case and the children were bonded with him. At the time of the preparation of the June 2024 SAR, E.A. was subject to a no-contact order that prevented him from having contact with Mother and/or the children, however. E.A. had been working to secure housing appropriate to accommodate the children but had not yet done so as of June 2024. Further, the Agency learned through public records that there was an active warrant for E.A.'s arrest. Although CCDCFS once considered E.A. as a possible placement for the children, the Agency ultimately eliminated him because of the above-mentioned concerns.

**{¶ 10}** CCDCFS conducted a family search for possible placement for the children. Mother denied having any interested or able family members. E.A. suggested his mother ("paternal grandmother") and his adult daughter as possibilities. The GAL's February 2025 report indicates that both paternal grandmother and the adult daughter were investigated but failed to follow through with CCDCFS. The GAL opined that granting permanent custody to CCDCFS was in the children's best interest.

**{¶ 11}** In February 2025, CCDCFS's motion to modify temporary custody to permanent custody was heard before a magistrate. At the time, Sau. M. was eight years old and Sah. M. was six years old. The magistrate issued a decision for each child in which he recommended termination of parental rights and that the children

be placed in the permanent custody of CCDCFS. Mother did not file objections to the magistrate's decisions. On February 25 and 26, 2025, the juvenile court issued judgments affirming the magistrate's decisions. Mother has appealed from those judgments, raising a sole assignment of error in which she contends that the juvenile court's judgments granting permanent custody of the children to CCDCFS was against the manifest weight of the evidence.[1]

**Law and Analysis**

**Plain Error and Limited Review**

{¶ 12} Under Juv.R. 40(D)(3)(b), a party who objects to a magistrate's decision must (1) file written objections to the decision within 14 days of the decision, (2) state with specificity and particularity all grounds for objection, and (3) support objections to a magistrate's factual finding with a transcript of the evidence submitted to the magistrate or an affidavit of evidence if a transcript is unavailable. Juv.R. 40(D)(3)(b)(i)-(iii). If none of the parties files written objections, a trial court may adopt the "magistrate's decision unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Juv.R. 40(D)(4)(c).

{¶ 13} When an appealing party has failed to file objections to a magistrate's decision in the trial court, our review is limited to plain error:

> [e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion whether or not specifically designated as a finding of fact or conclusion

---

[1] Neither of the children's Fathers have appealed; therefore, except where appropriate, we do not discuss the Fathers but, rather, focus our discussion on Mother.

of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

Juv.R. 40(D)(3)(b)(iv).

{¶ 14} Juv.R. 40(D)(3)(b)(iv) "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal." *In re Etter*, 134 Ohio App.3d 484, 492 (1st Dist. 1998), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

{¶ 15} Thus, because Mother failed to object to the magistrate's decisions in the juvenile court, our review is limited for plain error. *See Hamilton v. Hamilton*, 2016-Ohio-5900, ¶ 6 (10th Dist.), citing *Lavelle v. Lavelle*, 2012-Ohio-6197, ¶ 8 (10th Dist.). As the *Hamilton* Court explained:

> [I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. *Uretsky v. Uretsky*, 10th Dist. No. 02AP-1011, 2003-Ohio-1455, ¶ 7, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099 (1997), syllabus. 'Indeed, the plain error doctrine implicates errors in the judicial process where the error is clearly apparent on the face of the record and is prejudicial to the appellant.' *Skydive Columbus Ohio, L.L.C. v. Litter*, 10th Dist. No. 09AP-563, 2010-Ohio-3325, ¶ 13, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 18 Ohio B. 281, 480 N.E.2d 802 (1985). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *In re C.M.*, 10th Dist. No. 07AP-933, 2008-Ohio-2977, ¶ 50, quoting *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

*Hamilton* at ¶ 8.

{¶ 16} In addition to not objecting to the magistrate's decisions, Mother neither requested nor obtained the transcript from the hearing on the Agency's motions to modify temporary custody for the juvenile court's review. Although Mother has supplemented the record on appeal with the transcript, we are precluded from reviewing it because the juvenile court did not have the opportunity to review it before issuing the subject judgments. *See In re J.K.*, 2012-Ohio-214, ¶ 14-16 (4th Dist.) (An appellate court may not consider the transcript of the magistrate's hearing when a party fails to file objections to a magistrate's decision and fails to file a hearing transcript with the trial court.).

**Permanent Custody Determination**

{¶ 17} In her sole assignment of error, Mother contends that the juvenile court's judgments granting CCDCFS's motion to modify temporary custody to permanent custody were against the manifest weight of the evidence.

{¶ 18} The Supreme Court of Ohio has clarified that, when reviewing a juvenile court's award of permanent custody and termination of parental rights, "the proper appellate standards of review to apply . . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties" rather than an abuse-of-discretion standard. *In re Z.C.*, 2023-Ohio-4703, ¶ 18.

{¶ 19} In reviewing a juvenile court's decision regarding permanent custody on weight-of-the-evidence grounds,

the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179.

{¶ 20} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). Under the first prong, after a hearing, the juvenile court considers whether any of the following factors have been established by clear and convincing evidence:

(a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody;

(d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or

(e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 21} The juvenile court made findings under R.C. 2151.414(B)(1)(b) and (d). The findings were supported by clear and convincing evidence. Under subsection (b) — that the children were abandoned — R.C. 2151.011(C) provides that

"a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." At the time the June 2024 SAR was prepared, Mother had only visited with the children twice in 2024, which necessarily means that she failed to visit with them for more than 90 days.

{¶ 22} Under subsection (d) — the 12 out of 22 months finding — R.C. 2151.414(B)(1)(e) provides in relevant part that "[f]or the purpose of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after removal of the child from the home."

{¶ 23} The record demonstrates that the children were removed from Mother's care on December 24, 2022. The children were adjudicated neglected on May 25, 2023. February 26, 2023 represented 60 days after the children were removed from their home. The Agency filed its motion to modify temporary custody to permanent custody on May 29, 2024. Accordingly, the children were in temporary custody for approximately 15 months (three months beyond the required 12 months) before CCDCFS filed its motion for permanent custody. Thus, clear and convincing evidence supported the juvenile court's finding under R.C. 2151.414(B)(1)(d).

{¶ 24} On this record, the first prong required to grant permanent custody to CCDCFS was satisfied.

{¶ 25} Under the second prong of R.C. 2151.414, when any one of the factors under R.C. 2151.414(B)(1) exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). The R.C. 2151.414(D)(1) factors are as follows:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶ 26} The juvenile court made findings under all the subsections of R.C. 2151.414(D)(1). Under subsection (a), the court found that "Mother has

abandoned the child[ren]. Mother has visited the child[ren] only a few hours in past eighteen (18) months." Review of the juvenile court's June 2024 SAR and the GAL's February 2025 report support the trial court's finding. Under subsection (b), the trial court found that the GAL recommended CCDCFS be granted permanent custody.

{¶ 27} Regarding the children's custodial history, the juvenile court found under subsection (c) that the children had been in custody since December 2022. The court further made the following finding under subsection (d):

> The child[ren] deserve[ ] a safe and stable home environment where [their] needs can be met and [they] can thrive. This cannot be achieved with Mother as she has not engaged in case plan services and has not remedied the cause for removal.

{¶ 28} The juvenile court also made findings under R.C. 2151.414(E), including under subsection (10), finding that Mother abandoned the children. As mentioned, R.C. 2151.414(D)(1)(e) requires the court to consider whether any factors under R.C. 2151.414(E)(7) to (11) apply in making its best interest determination. The remaining R.C. 2151.414(E) factors will be discussed below.

{¶ 29} The juvenile court also considered the factors under R.C. 2151.414(D)(2), which are as follows:

> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

R.C. 2151.414(D)(2)(a)-(d).

{¶ 30} The juvenile court found that all of the above factors applied. Our review of the record confirms that the clear and convincing evidence supported the findings. Under R.C. 2151.414(D)(2)(a), at least one of the (E) factors — that Mother abandoned the children — was present and because Mother had not made any progress on her case plan the children could not or should not be returned to her. Under R.C. 2151.414(D)(2)(b), the children had continuously been in CCDCFS's custody since their removal from Mother in December 2022 through the time of the February 2025 trial. Moreover, because the children had been in CCDCFS's continuous custody for over two years, their time for being in temporary custody could not be extended.[2]

{¶ 31} Under R.C. 2151.414(D)(2)(c), the children did not qualify for a planned permanent living arrangement because they were not at least 16 years of age as required under R.C. 2151.353(A)(5). And, under R.C. 2151.414(D)(2)(d), no relative or interested party filed a motion for legal custody of the children.

---

[2] *See* R.C. 2151.414(D)(4), which provides in relevant part that "the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section."

Moreover, the Agency investigated relative placement and the only possible relative, E.A., ultimately was not a viable option because, among other reasons, he had a no-contact order with the children and an active arrest warrant.

{¶ 32} Thus, clear and convincing evidence supported the juvenile court's finding that all the R.C. 2151.414(D)(2) factors applied. A juvenile court's determination that all of the R.C. 2151.414(D)(2)(a)-(d) factors apply mandates a finding that "permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of [an agency]." R.C. 2151.414(D)(2); *In re A.S.*, 2021-Ohio-3829, ¶ 42 (8th Dist.), citing *In re G.A.*, 2020-Ohio-2949, ¶ 59 (8th Dist.).

{¶ 33} The juvenile court also found that the children could not, or should not, be placed with Mother after consideration of the R.C. 2151.414(E) factors. That section provides in relevant part as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions

causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

. . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

. . .

(10) The parent has abandoned the child.

. . .

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶ 34} A review of the record demonstrates that the juvenile court's findings under R.C. 2141.414(E) were supported by clear and convincing evidence. Mother failed to engage in her case plan services and therefore failed to remedy the conditions that led to the children's removal from her care. The case plan included addressing substance use issues; Mother indicated that she drank as a stress reliever

and would continue to do so. Mother also barely visited with the children, which resulted in the juvenile court finding that she had a lack of commitment toward them, abandoned them, and was unwilling to provide for them.

{¶ 35} Because, as the juvenile court found and we affirm, the children cannot or should not be placed with Mother within a reasonable time the juvenile court could not return them to Mother. *See In re T.S.*, 2024-Ohio-827, ¶ 16 (8th Dist.) ("[A] trial court's finding that it cannot or should not place a child with a parent precludes the court from considering returning the child to Mother's custody.")

{¶ 36} We recognize that a parent has a fundamental interest in the care and custody of his or her child. *In re L.W.*, 2019-Ohio-1343, ¶ 20 (8th Dist.). Parental rights are not absolute, however: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 2016-Ohio-7897, ¶ 21 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), citing *In re Howard*, 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986). This court does not look upon these matters lightly, and this case is certainly no exception. But in light of the above, the juvenile court's decision is not against the manifest weight of the evidence.

{¶ 37} Mother's sole assignment of error is overruled.

{¶ 38} Judgments affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, PRESIDING JUDGE

SEAN C. GALLAGHER J., CONCURS;
KATHLEEN ANN KEOUGH J., CONCURS (WITH SEPARATE OPINION)

KATHLEEN ANN KEOUGH, J., CONCURRING:

{¶ 39} I concur fully with the majority opinion. I write separately, however, to express my concern about the practice of referring motions for permanent custody to a magistrate to conduct the evidentiary hearing, which for all practical purposes is a trial. This practice requires a parent to file objections to the magistrate's decision to preserve appellate review beyond just for plain error. This process is just another hurdle that a parent must complete if the parent challenges the agency's attempt to terminate their parental rights. But more importantly, the process only causes unnecessary delay in the already uncertainty a child faces during these proceedings.

{¶ 40} It has long been held that "'the permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case.'" *In re Hoffman*, 2002-Ohio-5368, ¶ 14, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). Accordingly, the most serious legal proceeding a parent faces oftentimes is referred to an unelected magistrate to receive testimony and make an initial legal determination whether the parent(s) should maintain their parental rights over their children.

{¶ 41} I recognize that the juvenile rules authorize the appointment of a magistrate to hear permanent custody motions. Juv.R. 40 permits a court to appoint magistrates to assist a court with legal proceedings, and subsection (C) governs the scope of the magistrate's authority. Currently, the juvenile rules only prohibit magistrates from presiding over jury trials, motions involving a determination of a child's status as a serious youth offender, and non-jury trial adjudications of a case against an alleged serious youthful offender. *See* Juv.R. 40(C)(1)(a)-(c). Nevertheless, Juv.R. 40(D)(1)(b), provides that a juvenile court

> may limit a magistrate's reference by specifying or limiting the magistrate's powers, including but not limited to, directing the magistrate to determine particular issues, directing the magistrate to perform particular responsibilities, directing the magistrate to receive and report evidence only, fixing the time and place for beginning and closing any hearings, or fixing the time for filing any magistrate's decision on the matter or matters referred.

Accordingly, the juvenile court, through its local rules, has the authority to limit a magistrate from considering an agency's motion for permanent custody. The

Cuyahoga County Juvenile Division's local rules do not provide for such limitation. *See* Cuyahoga C.P., Juv. Div., Loc.R. 7.

{¶ 42} Nevertheless, it cannot be ignored that when a magistrate conducts the evidentiary hearing on a motion for permanent custody, the process of permanency for the children causes further delay. After the magistrate conducts the hearing and renders a decision, the juvenile rules afford a parent or a party 14 days to file objections to the magistrate's filed decision. Juv.R. 40(D)(3). If the magistrate did not provide findings of fact or conclusions of law in its decision, a party may request the magistrate to do so within seven days of the filed decision. Interestingly, neither the juvenile rules nor the revised code requires findings of fact and conclusions of law in permanency cases. Juv.R. 40(D)(3)(a)(ii); R.C. 2151.414(C).

{¶ 43} The juvenile rules then mandate that if a party wishes to object to a finding of fact or conclusion of law, the party then must request and file within 30 days of the magistrate's decision, a transcript of the proceedings or an affidavit of the evidence, if a transcript is not available. But in Cuyahoga County, before a party can even order a transcript, the party must first seek permission from the juvenile court to obtain the transcript. *See* Cuyahoga C.P., Juv. Div., Loc.R. 34(D) ("[A]n individual seeking an audio copy or transcript of a court hearing or case shall complete a 'Request for Transcript or Audio Copy of Hearing Form' which is available in the Clerk's Office. The form must be completed and accompanied by a court order or a completed notice of appeal."). Once the party files the transcript,

the juvenile rules allow a party to seek leave to file supplemental objections based on the information in the transcript. Juv.R. 40(D)(3)(b)(iii).

{¶ 44} Only after all these steps are taken will the trial court conduct an independent review to rule on the objections. *See* Juv.R. 40(D)(4)(d) ("In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."). Moreover, only after all these steps are completed will the objecting party preserve the ability to have their subsequent appeal in this court reviewed beyond just for plain error. *See* Juv.R. 40(D)(3)(b)(iii)-(iv).

{¶ 45} The delay created when a magistrate conducts the hearing is entirely unnecessary and avoidable. This entire aforementioned process could all be alleviated if the trial judge would conduct the evidentiary hearing on an agency's motion for permanent custody and render final judgment. Moreover, the parent or party would not just be limited for plain error review on appeal for failing to file objections or a transcript.

{¶ 46} Additionally, if the parent does not file objections to the magistrate's decision, as in this case, the juvenile rules do not require the trial judge to review the transcript or evidence of the proceedings before considering whether the adopt or approve the magistrate's decision. Juv.R. 40(D)(3)(c) provides that if no objections are filed, "the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's

decision." Accordingly, in cases that have been described as the "the family law equivalent of the death penalty in a criminal case," the trial judge is not even required to review the evidence presented at the hearing prior to adopting the magistrate's decision.

{¶ 47} Until the Ohio Supreme Court expressly limits a magistrate's authority regarding consideration of motions for permanent custody by modifying Juv.R. 40, the juvenile court should consider whether it is in the best interests of the parties for magistrates to continue conducting permanent custody hearings. In my opinion, if the trial judge would conduct the evidentiary hearing and initially determine whether the agency satisfied its burden, this process would not only remove the additional hurdle of objecting to a magistrate's decision and preserve a party's ability for full appellate review, but it would more importantly remove the delays — delays that only hinder the goals of stability and permanency for these children. These delays that the juvenile rules currently allow for cannot be in the best interests of the children.