[Cite as *In re K.L.D.*, 2026-Ohio-2326.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE K.L.D. | : | |
| | : | No. 115816 |
| A Minor Child | : | |
| | : | |
| [Appeal by D.D., Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** June 18, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA-23113452

*Appearances:*

D.D., *pro se.*

J.C., *pro se.*

DEENA R. CALABRESE, J.:

{¶ 1} Appellant D.D. ("father") appeals the October 19, 2025 judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), which established father's child-support obligations. Upon our review of the record in light of applicable law, we find some merit to the appeal. Accordingly, we affirm in part, reverse in part, and remand to the juvenile court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

{¶ 2} On or about April 27, 2008, J.C. ("mother") gave birth to K.L.D. Father acknowledged paternity, which was subsequently established by administrative order dated May 29, 2018.

{¶ 3} According to the record, it was father who invoked the jurisdiction of the juvenile court in the underlying case by filing an application to determine custody on November 23, 2023. At that time, father listed his address as 4233 W. 23rd St., Cleveland, OH 44109. Mother waived service, acknowledging receipt of father's application to determine custody. The parties appeared for a scheduled mediation and executed a mediation agreement on December 28, 2023. On the same day, the juvenile court docketed an entry designating mother and father custodial and residential parents, with mother designated the residential parent for school purposes.

{¶ 4} On July 3, 2024, the juvenile court mailed statements to both mother and father indicating payment due with respect to the previously held mediation. Father's statement was directed to his W. 23rd St. address.

{¶ 5} Just over eight months after the juvenile court's original order, father filed a motion to modify shared parenting. In his September 3, 2024 motion, father again listed his address as 4233 W. 23rd St., Cleveland, OH 44109. Father provided a family information sheet in connection with his motion. That document likewise specified the W. 23rd St. address.

**{¶ 6}** The juvenile court scheduled a mediation pertaining to father's motion for October 17, 2024. It issued notice of same to mother, as well as to father at his W. 23rd St. address. The record reflects that both mother and father appeared for mediation but were unable to reach an agreement.

**{¶ 7}** Subsequent proceedings were scheduled, and on October 18, 2024, hearing notices were sent to both father and mother. Notice to father was again mailed to his W. 23rd St. address. According to the record, the juvenile court held a hearing on December 4, 2024. Both mother and father appeared and entered into an agreement with respect to a modification of the shared parenting agreement. The juvenile court memorialized the shared parenting modification by judgment entry docketed December 20, 2024.

**{¶ 8}** The juvenile court, however, never issued a child-support order in connection with its custody order. Five months after the previous proceeding, on May 2, 2025, the Office of Child Support Services ("OCSS") filed a combined motion to intervene as a party in interest and motion to establish support. OCSS explained in its accompanying brief that it had an interest in the matter because mother "has either applied for IV-D services with OCSS to request assistance in securing a child support order or has become a recipient of public assistance or other benefits which operates as an automatic assignment of her rights with regard to child support issues." In moving to establish support, OCSS stated that the juvenile court, "upon issuance of the custody order," was "required to also issue an order for the payment of child support and provision of health coverage pursuant to the relevant child

support statutes and guideline worksheet." OCSS stated that the juvenile court's duty to issue a support order remained outstanding and that an order relating to medical and child support was in the best interests of the minor child.

{¶ 9} In compliance with Juv.R. 35(A), OCSS requested certified mail service upon both mother and father. Mother's address is not at issue. In the caption of its motion and the accompanying instructions for service, however, OCSS specified father's address as 10937 Pasadena Ave., Cleveland, OH 44108-3665 rather than the W. 23rd St. address that both father and the juvenile court had used in all previous proceedings. Under "additional instructions," a box is checked that indicates: "Please update the parties [sic] addresses to reflect the information below." The document is silent, however, with respect to the reasons underlying any update to father's address.

{¶ 10} On May 6, 2025, a summons pertaining to the OCSS motion was directed to father at the Pasadena Ave. address. The next day, May 7, 2025, notice of a June 3, 2025 in-person pretrial was likewise sent to father at the Pasadena Ave. address, as well as to mother and to the prosecuting attorney.

{¶ 11} The record contains a United States Postal Service certified mail receipt indicating that the summons was successfully delivered to 10937 Pasadena Ave., Cleveland, OH 44108-3665 on May 28, 2025. The "status" is specified as "left with individual." The record contains an imaged recipient signature, but the signature is illegible.

**{¶ 12}** The pretrial proceeded as scheduled on June 3, 2025.  We note that father has made the transcripts from this proceeding and the hearing held September 8, 2025, part of the record on appeal.  Our recitation of the facts below, however, are derived from the record, exclusive of the transcripts.  In our analysis below, we explain our reason for not reviewing the transcripts of the two proceedings.

**{¶ 13}** The juvenile court magistrate docketed an entry on June 5, 2025, memorializing the June 3, 2025 pretrial.  The entry indicates that mother and the OCSS prosecutor appeared.  Father is not mentioned.  The juvenile court magistrate stated in the entry that "[n]otices were sent by regular mail at the last known addresses listed in the court file on May 17, 2025."[1]  The journal entry further states that "[s]ervice has been perfected on all parties."  The juvenile court, on its own motion, continued the matter for final hearing, which it indicated was scheduled for July 14, 2025.  The record contains a form "Notice of Hearing" dated June 3, 2025, indicating that mother had been given notice of the July 14, 2025 hearing.  The record further indicates that notice was mailed on June 3, 2025, to both the prosecutor and to father, with father's address again specified as Pasadena Ave.

**{¶ 14}** The case was called for hearing on July 14, 2025, but only the prosecutor appeared.  There is no associated transcript.  The juvenile court continued the hearing to September 8, 2025.  Notices were then sent to all interested

---

[1] Based upon the record, the reference to May 17, 2025, appears to be a typographical error.  The notices associated with the referenced pretrial were dated May 7, 2025, and the record contains no notices (or any other documents) dated May 17, 2025.

parties. Once again father's address was specified as 10937 Pasadena Ave., Cleveland, OH 44108-3665.

{¶ 15} The case was again called for hearing on September 8, 2025, before a juvenile court magistrate. The hearing was audio-recorded and later transcribed, and the transcript was made part of the record on appeal, but we again note that we have not considered the transcript.

{¶ 16} The magistrate issued a decision on September 30, 2025. The magistrate specifically found "that service of process has been perfected on all parties." The magistrate further noted that notices of the hearing had been sent "by ordinary mail on July 14, 2025 to all necessary parties" and that only mother and counsel for OCSS appeared at the hearing. The magistrate permitted OCSS to intervene.

{¶ 17} The magistrate found that K.L.D. currently resides with mother, who was employed and earned $13,382 annually. With respect to father, the magistrate concluded:

> The court finds that the father's employment status is unknown, however pursuant to Mother's testimony, Father has been trained and has previously been employed as a plumber. Based upon the testimony of Mother, the Court finds it appropriate to impute the average salary of a plumber in Ohio to Father. Pursuant to the Bureau of Labor Statistics, the average income of a plumber in Ohio is $62,970. The Court therefore imputes Father's income to $62,970.

{¶ 18} The magistrate attached a guideline worksheet calculating child support pursuant to R.C. 3119.01 through 3119.24. The magistrate's bottom-line findings indicate:

Father's monthly child support obligation shall be $670.89 per month with the addition of a $34.47 in Cash Medical Support. Father shall also be obligated to pay a 2% processing fee. Therefore, bringing Father's total monthly obligation to $719.47.

{¶ 19} With respect to medical support, the magistrate found that "[i]nsufficient evidence was presented at this hearing for the court to determine if private health insurance is accessible and available at a reasonable cost." The magistrate ordered "that in accordance with R.C. 3119.30 and 3119.32(D) the father and mother are both liable for the health care expenses of the child who is not covered by private health insurance[,]" with costs shared "in the same proportion as the guideline percentage on line 17 for current support." The magistrate further ordered the following in the event health insurance for K.L.D. became available at a reasonable cost:

If, after the issuance of this order, health insurance for the child becomes available to the child support obligee at a reasonable cost, the child support obligee shall obtain private health insurance not later than thirty (30) days after it becomes available to the child support obligee. The child support obligee shall inform OCSS when private health insurance coverage for the child has been obtained. If private health insurance becomes available to the obligor at a reasonable cost, the obligor shall inform the OCSS and may seek a modification of health insurance coverage from the court.

{¶ 20} The magistrate's decision notified the parties that written objections could be filed within 14 days of the filing of the decision pursuant to Juv.R. 40(D)(4)(e)(i) and Civ.R. 53 (D)(4)(e)(i). Although not reflected in the physical file in the record on appeal, the juvenile court's online docket in this case indicates that

the magistrate's decision was mailed to father at the Pasadena Ave. address on September 30, 2025.[2]

{¶ 21} No party filed objections to the magistrate's decision. On October 19, 2025, the juvenile court adopted the magistrate's decision with no changes. In addition, the record does not reflect that father challenged service of process at the trial-court level by filing any motion or other pleading, such as a Civ.R. 60(B) motion for relief from judgment or a motion to vacate the judgment as void for lack of service. Instead, father filed this timely appeal.

## II. Assignments of Error

{¶ 22} Father presents four assignments of error for our review, which we present verbatim:

Assignment of Error No. 1

The trial court violated Appellant's constitutional right to due process by entering a default child support order without proper service of process.

Assignment of Error No. 2

The trial court abused its discretion by imputing income to Appellant based upon the salary of a licensed plumber rather than the Appellant's actual income as a plumbing apprentice.

Assignment of Error No. 3

The trial court erred by relying on inaccurate representations regarding shared parenting and the income of Appellee when calculating child support.

---

[2] We are permitted to take judicial notice of the juvenile court's online docket in the subject case. *See State v. Crawford*, 2024-Ohio-582, ¶ 23, fn. 1 (8th Dist.).

The trial court abused its discretion by ordering health insurance obligations and calculating child support without accurate information regarding the availability and cost of health insurance coverage for the minor child.

{¶ 23} We find merit to father's second assignment of error and, to a limited extent, his third assignment of error, which we view as related. Accordingly, we affirm in part, reverse in part, and remand for a new support hearing as to father's income and employment.

## III. Standard of Review

{¶ 24} Pursuant to Juv.R. 40(D)(3)(b), any party who objects to a magistrate's decision must (1) file written objections to the decision within 14 days of the decision, (2) state with specificity and particularity all grounds for objection, and (3) support objections to a magistrate's factual finding with a transcript of the evidence submitted to the magistrate or an affidavit of evidence if a transcript is unavailable. Juv.R. 40(D)(3)(b)(i)-(iii). If no party files written objections, the juvenile court may adopt the "magistrate's decision unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Juv.R. 40(D)(4)(c).

{¶ 25} In a case where an appealing party has failed to file objections to a magistrate's decision with the juvenile court, "our review is limited to plain error[.]" *In re S.M.*, 2025-Ohio-5144, ¶ 12 (8th Dist.). Juv.R. 40(D)(3)(b)(iv) specifically provides:

> Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

*Id.*

{¶ 26} Father neither objected to the magistrate's decision nor filed a transcript or suitable substitute (e.g., an affidavit of evidence if a transcript is unavailable). Furthermore, even though father filed a transcript in this appeal, we are precluded from relying upon it "because the juvenile court did not have the opportunity to review it before issuing the subject judgment[]." *In re S.M.* at ¶ 16, citing *In re J.K.*, 2012-Ohio-214, ¶ 14-16 (4th Dist.) (Appellate court may not consider transcript of hearing before magistrate where a party fails to file objections to the magistrate's decision and fails to file a hearing transcript with the trial court.); *In re M.P.*, 2025-Ohio-5223, ¶ 9 (8th Dist.) ("[A]lthough [father] has supplemented the record on appeal with the transcript, we are precluded from reviewing it because he failed to file a hearing transcript with the juvenile court.").

{¶ 27} Accordingly, we review for plain error. *See, e.g., In re S.M.* at ¶ 15. Invocation of the plain-error doctrine is not favored in civil cases and may be employed only in compelling circumstances:

> "[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself." *Uretsky v. Uretsky*, 10th Dist. No. 02AP-1011, 2003-Ohio-1455, ¶ 7, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997 Ohio 401, 679 N.E.2d 1099 (1997), syllabus. "Indeed, the plain error doctrine implicates errors in the judicial process where the error is clearly apparent on the face of the

record and is prejudicial to the appellant." *Skydive Columbus Ohio, LLC v. Litter*, 10th Dist. No. 09AP-563, 2010-Ohio-3325, ¶ 13, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 18 Ohio B. 281, 480 N.E.2d 802 (1985). "'Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" *In re C.M.*, 10th Dist. No. 07AP-933, 2008-Ohio-2977, ¶ 50, quoting *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

*Hamilton v. Hamilton*, 2016-Ohio-5900, ¶ 8 (10th Dist.); *see also In re S.M.* at ¶ 15.

## IV. Analysis

### A. First Assignment of Error

{¶ 28} In his first assignment of error, father argues that the juvenile court violated his constitutional right to due process by entering a child support order without proper service of process. The underlying record suggests that OCSS requested service of the support motion to an address never previously used by father in the underlying case. That same record, however, also supports a finding that under applicable law, service was appropriately presumed to have been perfected. As explained below, father's arguments for rebutting the presumption of service necessarily rely on evidence, and no evidence was presented to the trial court in the first instance. We are therefore constrained to overrule father's first assignment of error

{¶ 29} OCSS requested service of its motion pursuant to Juv.R. 35(A), which provides that the juvenile court's "continuing jurisdiction . . . shall be invoked by motion filed in the original proceeding, notice of which shall be served in the manner provided for the service of process." *Id.* Juv.R. 16(A) states for juvenile court

purposes, with exceptions not relevant here, service of a summons shall be made "as provided in Civil Rules 4(A), (C) and (D), 4.1, 4.2, 4.3, 4.5 and 4.6."

{¶ 30} As discussed above, the record reflects that OCSS requested certified mail service, that the clerk issued a summons to father by certified mail addressed to the Pasadena Ave. location, and that the envelope was left with an individual whose signature is illegible. Civ.R. 4.1(A)(1)(a) permits service by "United States certified or express mail." Certified mail was not the exclusive permissible method of service, but it was an authorized method of service of process under Civ.R. 4.1.

{¶ 31} The use of OCSS of an approved method of service, however, does not end the inquiry. "The rules governing service of process derive both from the Ohio Rules of Civil Procedure and the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Hunt v. Alderman*, 2025-Ohio-2944, ¶ 12, citing *Akron-Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403 (1980), syllabus. "While Civ.R. 4.1(A)(1)(a) focuses on 'how service shall be made,' the specifics of 'where, or to whom[,] process may be served' are derived from due-process guarantees." (Emphasis omitted.) *Hunt* at ¶ 13, quoting *Akron-Canton Regional Airport* at 404-405. "[C]ertified-mail service is sufficient only if it is 'reasonably calculated' to reach interested parties." *Hunt* at ¶ 2, quoting *Akron-Canton Regional Airport* at 406.

{¶ 32} In *Hunt*, the Ohio Supreme Court affirmed a Ninth District decision affirming a trial court's finding that service had not been perfected. In that case, the summons had been sent to the defendant's former residence and the plaintiffs knew

the defendant had moved.  Notably, *Hunt* was decided on a fully developed trial court record: The defendant had not only preserved the defense of insufficient service of process in his answer but had moved for summary judgment as to service. *See also Ohnstad v. Bruce & Mary Ann Erickson Found.*, 2026-Ohio-810 (1st Dist.) (applying *Hunt* where defendant trust moved to dismiss for lack of service and the motion was converted to a motion for summary judgment); *LVNV Funding, LLC v. Smith*, 2026-Ohio-1404 (6th Dist.) (applying *Hunt* where defendant filed Civ.R. 60(B) motions and ultimately an affidavit challenging service).  In the present case, where father failed to challenge service below, we are effectively prevented from employing the "reasonably calculated" standard adopted by *Hunt*, even though OCSS's use of the Pasadena Ave. address remains unexplained.

{¶ 33} We therefore fall back to the question of whether proper service could be presumed from the present record and, if so, whether father has rebutted that presumption.  As noted above, the record reflects delivery of the summons to the address provided by OCSS.  Father's observation that the signature on the certified mail return receipt is illegible is unavailing.  Civ.R. 4.1(A)(1)(a) provides that service of process may be made by certified mail "[e]videnced by return receipt signed by any person accepting delivery."  Accordingly, service was presumptively completed. *See Matteo v. Principe*, 2010-Ohio-1204, ¶ 10 (8th Dist.) (Where certified mail return receipt was "signed by other, for Patricia Matteo," service was "presumptively completed."), citing *Castellano v. Kosydar*, 42 Ohio St.2d 107, 110 (1975). *See also C.L.A. v. D.P.M.*, 2024-Ohio-836, ¶ 55-57 (8th Dist.) (Service was presumptively

completed even where "[t]he signature of the recipient [was] illegible" and the appellate court was "not able to ascertain the name of the signatory".).

{¶ 34} The *Matteo* Court observed, however, that "even though there is a presumption of proper service in cases where the Civil Rules on service are followed, 'this presumption is rebuttable by sufficient evidence.'" *Matteo* at ¶ 11, quoting *Rafalski v. Oates*, 17 Ohio App.3d 65, 66 (8th Dist. 1984). It further remarked that "we look suspiciously at any service attempted by means falling short of that most likely to achieve success." *Matteo* at ¶ 12, quoting *Akron-Canton Regional Airport* at 406. Finally, in *Matteo* this court noted that consistent with the authority above, "[c]ertified mail must be sent to an address 'reasonably calculated to cause service to reach the defendant.'" *Matteo* at ¶ 11, quoting *Ohio Civ. Rights Comm. v. First Am. Properties*, 680 N.E.2d 725 (2d Dist. 1996), citing *Akron-Canton Regional Airport*, 62 Ohio St.2d 403 (1980).

{¶ 35} In *Matteo*, the defendant-appellant filed a motion to dismiss for failure of service, which the juvenile court granted. *Matteo* at ¶ 15. The Matteo Court ultimately held that the juvenile court did not abuse its discretion in granting the motion to dismiss where it found that the summons pertaining to child support proceedings "improperly addressed to [the wrong party], sent to a place of business, and signed for 'by other' was sufficient to rebut the presumption of proper service[.]" *Id.*

{¶ 36} We highlight *Matteo* to emphasize that evidentiary-based challenges to service of process are properly raised in the first instance with the trial court.

"[W]here the plaintiff follows the civil rules governing service of process, proper service is presumed unless the defendant rebuts this presumption with sufficient *evidence* of nonservice." (Emphasis added.) *One Main Fin. Group, LLC v. Knight*, 2026-Ohio-1660, ¶ 16 (8th Dist.). In short, to "rebut the presumption of proper service, the opposing party *must produce evidentiary-quality information demonstrating that he or she did not receive service.*" (Emphasis added.) *Id.* at ¶ 17, citing *McWilliams v. Schumacher*, 2013-Ohio-29, ¶ 51 (8th Dist.), citing *Thompson v. Bayer*, 2011-Ohio-5897, ¶ 23 (5th Dist.).

{¶ 37} Here, father did not file any motions below to challenge service. Father's argument that he did not and does not live at the Pasadena Ave. address and that he did not receive service is contained solely in his brief on appeal. It is axiomatic that we cannot rely on any factual assertions contained solely in his appellate brief or any fact-based counterarguments contained solely in mother's brief. "[A] bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial." *Morgan v. Eads*, 2004-Ohio-6110, ¶ 13. "'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" *Id.*, quoting *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.

{¶ 38} We are keenly aware that father's complaints as to service, if properly raised at the trial-court level, might have provided grounds for reversal. After all, the record in this case suggests only one address associated with father prior to

OCSS's unexplained use of a new address in its motion. OCSS's child-support motion reopened proceedings in an existing case. Father's address had been established through his own filings in the case — which father himself initiated — as well as the evidently successful delivery of hearing and mediation notices. Indeed, it appears that father had diligently appeared at every turn. The record does not establish that the address used for service of OCSS's motion was father's residence, mailing address, business address, or other address reasonably calculated to apprise him of the new proceedings. Our review of the record instead indicates that the Pasadena Ave. address, which is inconsistent with father's address of record, first appeared in OCSS's motion with no explanation. Furthermore, while by no means dispositive, the certified mail receipt was signed by an unidentified person.

{¶ 39} What is missing from the record, however, is evidentiary-quality material, presented to the trial court, supporting father's contention that OCSS used an incorrect address and that he failed to receive notice of the support hearing.

{¶ 40} Father did not object to the magistrate's decision, though we recognize the circularity of suggesting he should be faulted for that lapse when his core argument is that the OCSS caused the juvenile court to begin using an incorrect address without his knowledge.[3] But father also did not file a motion to vacate the judgment for lack of service. "'The authority to vacate a void judgment is not derived from Civ.R. 60(B), but rather constitutes an inherent power possessed by Ohio

---

[3] We note that father alleges in his brief that he became aware of the support order only through garnishment proceedings.

courts,'" and "[t]he proper procedure for challenging a void judgment is to file a common-law motion to vacate the judgment." *One Main Fin. Group, LLC*, 2026-Ohio-1660, at ¶ 11 (8th Dist.), quoting *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus.

{¶ 41} In *One Main Fin. Group, LLC*, this court found that because "no signature was required for the delivery, and no one at the residence signed a return receipt[,]" the attempted service of process "failed to comply with Civ.R. 4.1(A)(2), and proper service cannot be presumed." *Id.* at ¶ 18. Furthermore, the defendant filed, with the trial court, a motion to vacate supported by a sworn affidavit averring, inter alia, that she did not receive service of the summons and complaint, that she did not receive notice of the lawsuit, and that she learned of the judgment against her only after it was entered. *Id.* at ¶ 19. In the sole case cited by father, *Medina v. Davis*, 2011-Ohio-4465 (9th Dist.), the defendant likewise moved to vacate a default judgment, arguing the judgment was void for lack of service and attaching an affidavit "in which she stated that she did not live at either address at which service had been attempted and 'did not receive notice of the lawsuit against [her] until long after the default judgment was granted.'" *Id.* at ¶ 3.

{¶ 42} This case, by contrast, does not contain such a developed record. Standing alone, the record indicates that proper service must be presumed because OCSS followed the civil rules. The record itself, which is all we are permitted to rely upon, suggests no service deficiency. It was therefore father's responsibility to rebut the presumption by filing a motion with the trial court that challenged service. As

explained above, we cannot take evidence in the first instance on appeal.  Father's first assignment of error is overruled.

## B. Second and Third Assignments of Error

{¶ 43} Because father's second and third assignments of error are related, we address them together.  In his second assignment of error, father argues that the juvenile court abused its discretion by imputing income to him based upon the salary of a licensed plumber rather than his purported actual income as a plumbing apprentice.  In his third assignment of error, father contends that the juvenile court erred by relying on inaccurate representations of mother regarding shared parenting and mother's income when calculating child support.

{¶ 44} With respect to father's second assignment of error, we find a facial defect in the trial court's order with respect to the imputation of income to father, and we view this defect as plain error.  The trial court's error requires a new evidentiary hearing as to father's income and employment and therefore revised worksheet calculations as to his support obligations.  With respect to father's third assignment of error, the support order contains no facial irregularities, but the underlying defect regarding imputation of income affects the sole parenting-time support adjustment identified in the worksheet.  Because the amount of the statutory adjustment is linked to income findings, it must likewise be redetermined and incorporated into any corrected support worksheet.  Accordingly, father's third assignment of error is sustained in part.

{¶ 45} R.C. 2151.23(G) provides that "[a]ny juvenile court that makes or modifies an order for child support shall comply with Chapters 3119., 3121., 3123., and 3125. of the Revised Code." R.C. 3119.02 states that for purposes of calculating child support, "the court or agency shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of [R.C.] Chapter 3119." The support obligation calculated pursuant to the basic child-support schedule and worksheet "is rebuttably presumed to be the correct amount of child support due." R.C. 3119.03.

{¶ 46} To determine support obligations, the agency or court "must determine the annual income of each parent." *In re M.P.*, 2025-Ohio-5223, at ¶ 13 (8th Dist.), citing *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 13, citing R.C. 3119.021(A). "'R.C. 3119.05(A) places the burden on parents to verify their income with documentation, not on the court to verify income.'" *In re M.P.* at ¶ 13, quoting *Desensi v. Eppley*, 2025-Ohio-2471, ¶ 1 (5th Dist.). R.C. 3119.01(C)(10) defines "income" as "either of the following":

> (a) For a parent who is employed to full capacity, the gross income of the parent;

> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

{¶ 47} In *In re M.P.*, this court recently explained the requirements for imputing potential income to a parent:

> For "potential income," which is currently defined under R.C. 3119.01(C)(18), to be imputed to a parent, *the trial court is required to*

*expressly determine that the parent is "voluntarily unemployed or voluntarily underemployed,"* and then determine what the parent would have earned if fully employed, using the criteria enumerated under R.C. 3119.01(C)(18)(a)(i)-(xi), formerly R.C. 3119.01(C)(17)(a)(i)-(xi). *Ayers* at ¶ 13, 27. These matters are to be determined from the facts and circumstances of the case, and generally the trial court's determinations should not be disturbed on appeal absent an abuse of discretion. *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993).

"'Despite the discretion a trial court has in child support matters, the court must literally and technically follow the statutory requirements in all material respects.'" *Mayer v. Mayer*, 2022-Ohio-533, ¶ 54 (10th Dist.), quoting *Wolf-Sabatino v. Sabatino*, 2011-Ohio-6819, ¶ 88 (10th Dist.), citing *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph two of the syllabus. Furthermore, "[a]n appellate court must be able to ascertain from the trial court's journal entry the amount of potential income imputed, *and the trial court's reasons for imputing income to a child support obligor.*" *Rock* at 113.

(Emphasis added.) *In re M.P.* at ¶ 16-17.

{¶ 48} In the present case, the juvenile court found that father's employment status was "unknown," and then imputed income to him. This is fatal to the trial court's order under *Ayers*, which held that under the "plain language" of the support statute a court must "make two specific determinations when calculating potential income." *Ayers* at ¶ 14. "First, the court must determine that a parent's unemployment or underemployment was voluntary." *Id.* "Second, the court must determine what the parent would have earned if fully employed," using statutory criteria. *Id.*

{¶ 49} Here, the juvenile court skipped the first determination and proceeded directly to the second. Pursuant to *Ayers*, an "express determination of voluntary unemployment [is] a condition precedent to imputing potential income

for child-support-calculation purposes." *Id*. at ¶ 1. "The precise wording is . . . inconsequential, but the . . . court's order must clearly evince a finding that a parent's unemployment or underemployment is voluntary." *Ayers* at ¶ 23. The order in this case does not clearly evince such a finding. In fact, the trial court's finding that father's employment status was "unknown" suggests the absence of any finding as to voluntary unemployment or underemployment; the juvenile court cannot say both that father's employment status is unknown and then, without more, treat father as voluntarily unemployed or underemployed.

{¶ 50} If we instead treat the juvenile court's finding as akin to silence on the issue of whether father was voluntarily unemployed or underemployed, that would not change the analysis. *Ayers* makes clear that "an assumption from silence in this context is improper." *Id*. Instead, the Ohio Supreme Court recognized a trial court's "mandatory rather than discretionary obligation, which must be 'followed literally and technically in all material respects,'" to "include a determination of voluntary unemployment in its order" before imputing income. *Id*. at ¶ 21, quoting *Marker*, 65 Ohio St.3d 139, at paragraph two of the syllabus.

{¶ 51} As in *Ayers*, "none of the trial court's statements in its . . . order may be interpreted as a determination that [father] was voluntarily unemployed" or that he was voluntarily underemployed. *Ayers* at ¶ 24. This was reversible error. *Id*. at ¶ 27. Moreover, the legal defect evident on the face of the order, which specifies father's employment status as "unknown" but nevertheless imputes income to him, is plain error. Father's second assignment of error is sustained.

{¶ 52} This conclusion also affects father's third assignment of error. We reiterate that we are precluded from reviewing the trial transcript and that we are further precluded from addressing the factual arguments that father raises for the first time on appeal. The trial court's order contains no specific findings regarding any support adjustments based upon parenting time except for its indication in line 19(a) of the child support worksheet that father has parenting time under a court order that equals or exceeds 90 overnight visitations per year, with a corresponding ten-percent reduction reflected in line 19(b). *See* R.C. 3119.051(A); *In re J.M.*, 2025-Ohio-1455, ¶ 34 (8th Dist.).[4] This adjustment plainly inured to father's benefit.

{¶ 53} To the extent father offers new parenting-time arguments never raised in juvenile court in an effort to support additional deviations, we are foreclosed from considering them for the reasons discussed in connection with his first assignment of error. The erroneous imputation of income, however, affects the entire support worksheet. The ten-percent support reduction pursuant to R.C. 3119.051(A) is calculated using the annual individual support obligation, and that obligation flowed from an income determination that is plainly erroneous. In short, an incorrect income determination necessarily means the corresponding R.C. 3119.051(A) reduction is incorrect, and any monetary adjustment based upon parenting time must be calculated anew by the juvenile court as part of a corrected worksheet.

---

[4] Section 25 of the worksheet, pertaining to R.C. 3119.23 and 3119.231 deviation factors, contains no check marks or dollar figures.

{¶ 54} Accordingly, father's third assignment of error is sustained to the extent that the juvenile court must recalculate the mandatory deviation based upon its determination of father's actual income and employment status, including whether he is voluntarily unemployed or underemployed. The case is remanded for the purpose of taking evidence on father's income or potential income and recalculating child support accordingly. On remand, the juvenile court may take new testimony pertaining to credit for parenting time or mother's income.

### C. Fourth Assignment of Error

{¶ 55} In his fourth assignment of error, father argues that the juvenile court abused its discretion by ordering health insurance obligations and calculating child support without accurate information regarding the availability and cost of health insurance coverage for K.L.D. We find no merit to this assignment of error.

{¶ 56} Contrary to what father suggests in framing this assignment of error, the juvenile court did not order him to obtain private insurance at this juncture. The juvenile court's final entry expressly states that "[n]o Private Health Insurance Questionnaire was submitted to the court[]" and that "[i]nsufficient evidence was presented at [the] hearing to determine if private health insurance is accessible and available at a reasonable cost." The juvenile court instead ordered cash medical support and further ordered "that in accordance with R.C. 3119.30 and 3119.32(D) the father and mother are both liable for the health care expenses of the child who is not covered by private health insurance[,]" with costs shared "in the same proportion as the guideline percentage on line 17 for current support." Finally, the

juvenile court imposed obligations to obtain health insurance on both mother and father, but only where "health insurance becomes available . . . at a reasonable cost[.]"

{¶ 57} The juvenile court did not assume that father had private health insurance available through his employer or otherwise. Nor did the juvenile court order father to provide health insurance for K.L.D. no matter the cost. Simply put, there is no present order requiring father to provide health insurance.

{¶ 58} An appellant "bears the burden of showing error by reference to matters in the record." *Pedra Properties, LLC* at ¶ 15, citing App.R. 9(B), 12(A)(2), and 16(A). Because the trial court's judgment entry does not impose the obligations father purports to contest, he has not demonstrated error.

{¶ 59} Appellant's fourth assignment of error is overruled.

{¶ 60} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR